Axana was unable to buy the land for $1,045 upon one-third cash and balance on a credit of one year, but felt able, and was willing, to buy for $1,345, upon one-third cash and the balance on a credit of six years. The plaintiff purchased the land and resold it to her upon her own terms, and this is really all that the contract amounts to. There is no usury in it."

On appeal, this decree was approved and affirmed. OPINION by MR. CHIEF JUSTICE SIMPSON, March 15, 1890. *A. Blythe*, for appellants. *T. Q. & A. H. Donaldson*, contra.

No. 2580. CATOE *v.* CATOE. November Term, 1889. In action for partition between the heirs of John Catoe, James Catoe, his father, claimed that a tract of land conveyed to John by one Hasseltine was so conveyed without James' consent, Hasseltine having purchased at James' request, under a promise to convey to James when repaid, and that Hasseltine had been paid by James. The great question in issue in the case was whether this money had been paid by James, the father, or by John, the son, as to which there was a mass of testimony, and a receipt was produced, signed by Hasseltine, in which he acknowleged the receipt from James Catoe of "one hundred and fifty dollars in full for balance due on lands bid off at sheriff's sale."

The Circuit Judge (Witherspoon), after hearing the witnesses, decreed in favor of John's heirs, holding that James had no interest in the land, and had paid nothing to Hasseltine, and that the land was conveyed to John at James' request. On appeal, this decree was affirmed, this court saying :

"Undoubtedly, the facts from which the law will raise a resulting trust may be shown by parol proof. When the trust does not appear upon the face of the deed or other instrument of transfer, a resort to parol proof is indispensable. But, as Mr. Pomeroy (volume 2, § 1040) says, 'it is settled by a complete unanimity of decision that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt.' Now, in the light of this wise and positive rule, can we say that there was such evidence in this case ? We have read carefully the great mass of testimony contained in numerous pages of written manuscript, and we are unable to see that the finding of the judge is

not sustained by a preponderance of the testimony, which is any-thing else than clear, strong, and without doubt, in respect to the allegation that James Catoe refunded the money paid for the land at sheriff's sale.

"The deed of the land in 1881 to John E. Catoe was drawn by a lawyer of intelligence and high standing, at the instance and request of James Catoe himself, who, upon that occasion, said that John and Frank (another son) had made the money that went to pay for the land, and he and all the parties wished that the titles should be made to John. About this, we take it, there can be no doubt whatever; for Ernest Moore, Esq., witnessed the deed, and that gave him the right to state the conversation which occurred at the time. *Moffatt* v. *Hardin*, 22 S. C., 26. James Catoe was unable to keep the land from being sold by the sheriff for debt in 1871, and we see no evidence of such im-provement in his affairs as to enable him, out of his own means, to redeem the land by the year 1879. The title was made in 1881 to John E. Catoe, who exercised ownership over it as his own property, by giving a mortgage upon it. If James Catoe considered the land as his own, is it likely that he would have remained quiet until after John's death in 1886, unless, as sug-gested, matters were allowed to stand as they were in order to protect the land from his creditors? And, in that case, it is quite clear that James Catoe could not ask the court to aid him in recovering it.

"But it is strongly urged upon us by the indefatigable coun-sel of James Catoe, that he proved 'a receipt' for $150, from Has-seltine to himself, as the last payment of the money advanced at the sheriff's sale, which, being in writing, it is contended, should have been considered as conclusive—entirely beyond the reach of parol evidence to affect it. Such a receipt was proved, and it may have afforded *prima facie* evidence that he (James Catoe) actually delivered to Hasseltine that much of the money ad-vanced at the sheriff's sale. But, as an isolated fact, it seems to be so much in conflict with most of the circumstances, and espe-cially with his own declarations at the time the deed was executed, that the testimony on that point may possibly be reconciled by considering that, as the contract was made with the father, the sons furnished him the money to pay Hasseltine. It is well set-

tled that a receipt is not one of those solemn papers in writing as to which parol testimony is not admissible, but is always capable of explanations. *Heath* v. *Steele*, 9 S. C., 92; *Moffatt* v. *Hardin*, 22 S. C., 27.

"But even if James Catoe had actually returned the money advanced at the sheriff's sale, and directed the deed executed to his son, John E. Catoe, as it seems to us, the law would not allow him to raise a resulting trust against said son, but assume that it was intended as an advancement, especially after the son was allowed to hold himself out to the world, for a series of years, as the legal owner of the land. 'If, therefore, a purchase of either real or personal property is made by a   *   *   *   father in the name of his legitimate child,   *   *   *   no trust results in favor of the   *   *   *   father, but the transaction is presumed to be a gift or advancement to or for the benefit of the   *   *   *   child.' 2 Pom. Eq. Jur., § 1039."

Opinion by Mr. Justice McGowan, March 18, 1890.  *R. E. & R. B. Allison*, for appellant.  *Ernest Moore*, contra.

No. 2584.  Burnett *v.* Gentry.  November Term, 1889. The defendant, as sheriff, levied and sold property of this plaintiff and applied proceeds to the satisfaction of a senior judgment, leaving in his hands a balance, which was claimed by one Davis, who had an execution, not marked satisfied, in the sheriff's office.

Burnett went to see the sheriff, but had no receipt, and made no satisfactory showing that the execution had been paid; and Davis denying that the judment had been paid, and demanding the money, the sheriff, after waiting some time, paid the money to Davis. Thereupon plaintiff brought this action to recover this balance, and obtained judgment in the court below under the charge of the trial judge, Hudson.

On appeal this judgment was reversed, the court holding that a sheriff who *bona fide* applies proceeds of official sales to the senior execution in his office, regular on its face, open, and nothing about it to indicate that it is either void or had been paid, cannot be held liable for a misappliance even if it should afterwards appear that it was, in fact, then paid by a private settlement between the parties.

The court say : "We are not able to see that the sheriff could