JONES v. HUGHEY.

1. EVIDENCE.—There is no evidence in this case to support the finding, that the defendant had purchased the land under an agreement that he would hold it for the benefit of himself and sisters, and that he has since been·so holding it.

2. IBID.—The evidence in this case shows that the ninety-nine acres was sold under proceedings in the Probate Court and bought by the defendant.

3. IBID.—RESULTING TRUST—CASE FOLLOWED.—In order to establish a *resulting trust*, it is incumbent on the *cestui que trust* to show *clearly* that the purchase money of the property sought to be affected by such a trust, or some definite portion of it, was furnished by the *cestui que trust* at the time of purchase. *Ex parte* Trenholm, 19 S. C., 126, followed.

4. PRACTICE—ADMINISTRATOR—ACCOUNTING.—If the defendant here, as administrator, had received funds or property, belonging to his intestate's estate, since the sale of the lands in question, the proper way to make him account is by action against him as administrator for an accounting.

5. MR. JUSTICE GARY *dissents.*

Before BUCHANAN, J., Abbeville, April 19, 1895. Reversed.

Action by Nannie Jones, J. R. Ellis, Annie Langley, Susan E. Ellis, Rose Ellis, Clyde Ellis, and Fannie Dyke, against Joseph L. Hughey for partition, commenced December 23, 1893. The Circuit Judge found that the plaintiffs were entitled to partition, but referred the case to the master to take further testimony and state the accounts between the parties. From this decree the defendant appeals.

*Messrs. Parker & McGowan,* for appellants.

13—46

*Messrs. Graydon & Graydon,* contra.

March 17, 1896. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. The action in this case was commenced on the 23d December, 1892, and the amended complaint, upon which the case was heard, was served on 30th of January, 1894. The object of the action was to obtain partition of a certain tract of land described in the first paragraph of the amended complaint, which, it was alleged, was held by plaintiffs and defendant as tenants in common. In the second paragraph of the amended complaint plaintiffs allege "that ninety-nine acres of said land descended to the plaintiffs and the defendant from their father, and the balance of said tract was purchased by the defendant with the money of these plaintiffs, and he now holds said lands as the trustee of these plaintiffs." In the third paragraph of the complaint, the plaintiffs simply set forth the shares, which they allege each of the said parties are entitled to in the said lands. All of these allegations are denied in defendant's answer, in which he alleges "that he is in possession of said land under good and valid titles from the court of probate for said State and county, by virtue of proceedings in said court for the sale thereof, as the property of James Hughey, deceased, the father of the plaintiffs, Nannie Jones and Fannie Dyke, and of this defendant, and the grand-father of the Ellis plaintiffs; and that he is seized and possessed of same as his own proper estate, and that the plaintiffs have no claim of right or interest therein." Upon these pleadings and the evidence set out in the "Case," his honor, Judge Buchanan, heard the case, and rendered his decree, in which, without stating any reasons, or indicating any testimony, upon which he based his conclusions, he found as matter of fact: "1st. That the money which purchased the land belonged to the defendant, and to Nannie Jones, Edna Ellis, and Fannie Dyke, his sisters. 2d. That the land was purchased by the said defendant under an agreement that he would hold the same

for the benefit of himself and sisters, and that he has since been so holding it." And after setting forth the shares or interest in the land to which the several parties are entitled, he finds as a conclusion of law: "That the land mentioned in the complaint is charged with the trust which is hereby declared;" and then orders: "That it be referred to the master for the further taking of testimony as to the accounts between the several parties pursuant to the finding herein, with power to state the credits between each other, any set-offs, and with leave to report any special matter;" but he rendered no judgment for partition.

From this judgment defendant appeals upon the several grounds set out in the record, which, under the view we take of the case, need not be stated here in detail.

It is very obvious that the pleadings raised but two issues. 1st. Whether the ninety-nine acres of land, referred to in the complaint, descended to the plaintiffs and the defendant as heirs at law of their father, James Hughey, and was held by them as tenants in common. 2d. Whether the balance of said tract was purchased by the defendant with money of these plaintiffs, and thereby became affected with a resulting trust in their favor. Very much of the testimony set out in the "Case" is entirely irrelevant to either of these issues, and need not, therefore, be considered.

And we may remark, in the outset, that there is no allegation in the complaint which calls for or warrants the Circuit Judge's second finding of fact, and no testimony whatever to sustain such an allegation, even if it had been made. The allegation upon which the plaintiffs base their claim is, that the lands in question were bought by the defendant with their money, and thereupon became affected with a resulting trust in their favor. That is a very different claim from a claim that the defendant purchased the lands "under an agreement that he would hold the same for the benefit of himself and sisters." But as we are unable to find, in all the voluminous testimony set out in the "Case," any trace of evidence of any such agreement, we

may dismiss that matter from further consideration, as being outside both of the pleadings and the evidence.

Turning, then, to the issues which are raised by the pleadings, we are to inquire, *first,* whether the allegation, that the ninety-nine acres descended to the plaintiffs and the defendant as heirs at law of their deceased father, has been sustained. It would be sufficient to say, that the Circuit Judge makes no finding whatever as to this issue, and there is no exception to his decree for omitting to pass upon that issue. But, in addition to this, we may say that the undisputed evidence, derived from the records of the Court of Probate, shows beyond question that this ninety-nine acres of land was sold by the order of that court under proceedings for the settlement of the estate of James Hughey, and bought by the defendant. This conclusively disposes of that issue.

The next inquiry is, whether the allegations that the balance of the land was bought by the defendant with the money of the plaintiffs, and thereby became affected with a resulting trust in favor of the plaintiffs? The case of *Ex parte Trenholm,* 19 S. C., 126, and the authorities therein cited, show, conclusively, that in order to establish such a trust, it is incumbent upon the *cestui que trust* to prove clearly, that the purchase money of the property sought to be affected by such a trust, or some definite portion of it, was furnished by the *cestui que trust at the time of the purchase.* So that the practical inquiry in the case is, whether the plaintiffs have shown that the purchase money of the land in question, or some definite portion thereof, was furnished by the plaintiffs *at the time such lands were bought* by the defendant. The undisputed testimony, derived from the records of the Court of Probate, introduced as evidence in this case, shows that the lands in question were sold, by the order of that court, at public outcry, for cash, on the 4th day of January, 1869, and bought by the defendant, and there is no evidence whatever that the plaintiffs, or either one of them, furnished the purchase

money, or any part thereof.   Indeed, there is not only no
evidence that the defendant, who was the administrator of
the estate of James Hughey, which proved to be insolvent,
had any funds in his hands belonging to that estate at the
time of the sale, but the evidence is to the contrary.   We
do not see, therefore, how it is possible to hold that the
plaintiffs furnished the purchase money, or any part thereof,
at the time the defendant bought these lands, and hence,
under the rule above stated, these lands could not be affected
with any resulting trust in favor of the plaintiffs.   The
plaintiffs have undertaken to show that the defendant was
furnished with funds to make this purchase, by the fact that
one Vatchel Hughey, a brother of the said James Hughey,
had turned over to the defendant, as administrator of James
Hughey, certain property for the purpose of reimbursing the
estate of James Hughey for the amount which that estate
had been required to pay to one Marshall, by reason of the
fact that James Hughey was the surety of the said Vatchel
Hughey on the Marshall debt.   But the testimony, so far
from *clearly* showing, as the rule requires, that this pro-
perty was placed in the hands of the defendant, either be-
fore or at the time of the sale, at which defendant bought
the land, rather tends to show that it was some time after-
ward.   For the records introduced show that the amount
of the Marshall debt was never ascertained until the 14th
of February, 1872—three years after the sale—and the tes-
timony of the widow of Vatchel Hughey, offered by the
plaintiffs, shows that Vatchel Hughey retained possession
of the land, which was the most valuable part of the pro-
perty, until about the time of his death in 1875.   There is
much other testimony to the same effect, which it is need-
less to refer to, for it is sufficient to say that there is liter-
ally no evidence that the defendant had been furnished with
the means of paying for the land, either before or at the
time of the sale, and such evidence is necessary to establish
a resulting trust.

Under this view of the case it is unnecessary to consider

the point raised by the defendant, that, even if any trust was established, the defendant has fully accounted to the plaintiffs. Indeed, we do not think this is a proper case for accounting, for if the defendant has, subsequent to the sale at which he bought the lands in question, received funds or other property from Vatchel Hughey, or from any other source, for the benefit of the estate of his intestate, the proper place for him to be called on to account for such funds or property would be in an action against him as administrator of the estate of James Hughey.

The judgment of this court is, that the judgment of the Circuit Court be reversed.

MR. JUSTICE GARY, *dissenting.* The complaint alleges that the plaintiffs and defendant are tenants in common of the land therein described.

The defendant, in his answer, denies that the plaintiffs and himself are tenants in common, and alleges that he is in possession of said land, under good and valid titles; that he is seized and possessed of the same as his own proper estate, and that the plaintiffs have no claim of right or interest therein.

The Circuit Judge found as matter of fact that the plaintiffs and defendant had interests in said land in the proportion stated by him. The pleadings raised an issue for trial on the *law* side of the court, but a jury trial was waived. The findings of fact by the Circuit Judge as to the issue of title is not the subject of review by this court. *Peoples* v. *Cummings*, 22 S. E. R., 730; *Capell* v. *Moses*, 36 S. C., 559.

I, therefore, dissent from the opinion announced by the majority of the court.