15426

ALL v. PRILLAMAN *ET AL.*

(20 S. E. (2d), 741)

November, 1941.

282

*Mr. Charles B. Elliott,* of Columbia, *Mr. Thomas W. Boulware,* of Barnwell, and *Mr. DuBose Boylston,* of Allendale, Counsel for Appellant,

*Mr. George Warren,* of Hampton, Counsel for Respondents,

June 11, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE STUKES.

This action was commenced on July 31, 1939, by service of the summons and complaint, which latter was usual in form for the recovery of the possession of a lot of land and improvements in Allendale, part of the former residence lot of Mrs. Gertrude All, deceased, and contained allegations of title in the plaintiff and that the defendant, Mrs. Gladys Prillaman, was in possession which she unlawfully withheld from plaintiff after demand, and on information and belief that the other defendants also unlawfully claimed the right to possession.

The named defendant answered for herself and for the other four defendants, who are her sisters, all of whom claim the property under a devise in the will of Mrs. All, their mother, and set up as a defense estoppel based upon the contest of the will by the plaintiff and the prior decision of the Court of Common Pleas in favor of the validity of that instrument. The last stated has now passed out of the case for the trial Judge discarded it and there is no pertinent appeal.

Other defenses contained in the answer necessary to mention were adverse possession of the property by the defendants for a period of more than ten years before the commencement of the action; and also, in the nature of a counterclaim, that Mrs. All conveyed the premises described in the complaint, other town property and several tracts of

farm land to the plaintiff by deed dated September 4, 1922, and recorded on the next day "entirely without consideration * * * (and) without any purpose or intent to surrender title to the property * * * which purpose and intent was well known to the plaintiff and he accepted the deed with full knowledge of the purpose and intent of the grantor not to surrender title to the property * * * (and that the purpose and the intent of the plaintiff were the same, that the title, possession and control of the property would remain in Mrs. All and her heirs) * * * (and that such rights of possession as have been exercised by the plaintiff were trespasses and that he has collected rents which he should pay over to the defendants)." The prayer of the answer was that the complaint be dismissed and that the defendant and her sisters, the devisees under their mother's will, should be declared the owners in fee of all of the property and awarded judgment for the amount of the rentals collected by the plaintiff, and for other appropriate relief, and costs.

The answer has been several times read in search of some allegation of fraud, duress or undue influence or facts from which one or the other might be inferred, but there is none. Instead, respondents rely upon the doctrine of a constructive trust which they contend was created by the relation of the parties, the circumstances of the conveyance and the lack of money consideration, which they say their evidence establishes. However, the judgment in their favor was founded by the trial Court upon the "family settlement" doctrine, as will be seen.

The plaintiff replied to the answer and counterclaim and denied the allegations of the latter except the substantial accuracy of the description of the various parcels of real estate conveyed to him by his mother, and set up the bar of the Statute of Limitations and of the Statute of Frauds and alleged adverse possession in himself of all of the property for more than ten years, conveyances of some of it, and

that his possession had been undisturbed except as to that described in the complaint of which the defendants had taken possession about two years prior; that he had paid taxes, made improvements and contracted various obligations in connection with the operation of the farms and mortgaged some of the land to the Federal Land Bank; and the reply concluded with a prayer that the counterclaim be dismissed and that the cloud on plaintiff's title thereby created be removed and that he be adjudged to be the owner of all of the property described in the counterclaim, and for other proper relief.

The testimony has been very carefully considered and it discloses that plaintiff's parents were engaged in large farming operations but lived in town on a spacious lot on which were also situate a cotton gin and some rental property. They provided an unusually extensive education for plaintiff who attended several northern universities, finished in law and was employed in the office of a practitioner in New York City for about a year, after which he returned to his parental home in 1922.

The title to the home and the other property was in the name of his mother but his father was then living and apparently operated the properties in his name. They had become heavily financially involved due to the deflation and crop failures of that era and conceived themselves to be about to lose their property, including the home, and after consulation among themselves and an older son, the deed which gave rise to this controversy was executed, whereby all of the property of Mrs. All was conveyed to the plaintiff upon a recited consideration of $2,760.00, acknowledged by the terms of the deed to have been paid, "and in the further consideration of assuming (by the grantee, the plaintiff), the encumbrances on the lands * * *."

The plaintiff was then living in the home and continued to reside there with his mother even after his marriage in 1929, and until 1932, when he purchased another home at

Allendale. The parents lived on in the home until their respective deaths in 1937, and meanwhile Mrs. Prillaman moved in about 1931, and from time to time other of the children and their children lived in the home.

Mrs. All left a will dated December 19, 1936, above referred to and relied upon by the defendants, which contains the following recital and attempted disposition of the property:

"Heretofore, at the suggestion of certain members of my family, and for reasons which they deemed expedient at the time, I conveyed, without consideration, unto my son, Fred H. All, certain real property, among which was included the home in which I am now living, and certain lots adjoining thereto. It was never my intention to surrender title to my home property, nor to the property hereinafter mentioned, and I have continued since the date of said conveyance to remain in possession of said property and to exercise control thereof, the same as if said conveyance mentioned above had never been executed, which said conveyance is no longer of any force and effect.

"The said property in question, besides the home place, extends from what is now known as the Bus Station to a line fence bounding the land of my son, H. W. All, and including the house and land known as Martha's House, and from Martha's House facing Esther Street, to the fence boundary of Dr. F. H. Boyd.

"I give, devise and bequeath, absolutely and in fee simple, unto my five daughters, Mrs. Gertrude Douglass, Mrs. Bessie Hogan, Mrs. Blanche Marshe, Mrs. Sara Abernethy, Jr., and Mrs. Gladys Prillaman, all of my property both real and personal. The real property includes the home in which I am now living, the land upon which it is situated, and adjoining lands. The personal property consists of my household furniture, as follows: 'One piano, what-nots, pictures, china, silver, bookcases, vases, rugs, linens, blankets, bed-

ding, bedroom suits, cooking utensils, range, chairs, and all other property that I may die seized of.'

"It is my desire that the house in which I now live be allowed to remain in use as it now is, that is to say, that the house and furnishings therein shall be kept intact, and my children shall come and go as heretofore. If this is not agreeable to my five daughters named above, then it is my desire that any or all of them shall be allowed to purchase, at a price agreeable to all of them, any article of furniture or other item of personal property of which I may die seized, the balance of my household furnishings and personal property, the house in which I now live, and the lot upon which same is located, to be disposed of as may be determined by my said five daughters, and the proceeds thereof to be divided equally among them.

"It is my desire that all real property of which I may die seized, other than the property upon which my home is located, shall be sold at and for a sum acceptable to my five daughters above-named, and that the proceeds thereof shall be divided equally among them."

The evidence is clear that at the time of the questioned conveyance all of the property was subject to large mortgage liens, amounting in all to some forty-five to sixty thousand dollars, and a large part of the farm property was subsequently conveyed by the plaintiff to the mortgagee in settlement of certain of the indebtedness. Some of it, including the home now in dispute, was subsequently again mortgaged to a local bank in the execution of which Mrs. All joined, but afterward the lot containing the cotton gin was conveyed to the elder brother of the plaintiff for a consideration of $4,000.00 and in that connection Southern Cotton Oil Company required the execution by Mrs. All of a so-called "release" of the real estate and personal property comprising "All's Ginnery" in which she recited that she at first refused to sign the instrument upon the ground that she had no interest whatever in the property; but in view of her prior

execution along with plaintiff of a mortgage over the property (which she recited was in order to avoid friction in her family) she proceeded to declare that she had "no interest in or claim, or demand of any kind against the said property," and went on to disclaim such in "any of the real and personal property heretofore conveyed by me (Mrs. All) to Fred H. All (her son, the plaintiff)."

The bank mortgage, in the execution of which Mrs. All had joined with the plaintiff (originally securing $12,626-.03), dated January 28, 1925, and due in one year, was transferred to plaintiff's sister, Mrs. Hogan, and plaintiff became further indebted to her and gave her another mortgage for $9,897.84; and on November 10, 1934, a contract was entered into by Mrs. Hogan on the one hand and plaintiff and his mother on the other whereby it was agreed that there remained unpaid of the mortgage debts the sum of $6,000.00, payment of which was extended at six per cent. per annum and certain obligations were included with respect to unpaid taxes and it was recited in effect that the agreement to thus accept less than the original indebtedness should not operate as a novation, but merely as an extension and alteration of the terms of payment. Plaintiff has since paid this mortgage indebtedness.

At the trial only the plaintiff and his brother (for the defendants) testified, but there was considerable documentary evidence which need not be reviewed other than as has been done above. Plaintiff made timely objections to all of the parol evidence which tended to vary or affect the terms of the deed of his mother to him but the trial Judge admitted such with some misgivings, expressed by him. The grounds of such objections were that the testimony was violative of the parol evidence rule and the Statute of Frauds.

Close analysis of the testimony of the brothers, the plaintiff for himself and his older brother for the defendants, their sisters, reveals little conflict and no more than should be

expected of recollections of an event which occurred about twenty years before and of no apparent personal importance to the defendants' witness at that time and of none now.

After the admission by the trial Judge of parol evidence of the "understanding" of the parties to the deed, of Mr. All, Sr., and of the elder brother, plaintiff's counsel, after reserving his right to insist upon his objection to such testimony, examined the plaintiff thereabout with the result that the latter testified that it was his intention at the time of the transaction to preserve, if possible, from the financial wreckage, the home of his mother for her use so long as she should live, and that purpose he had been able to achieve, as we have seen.

The brother, the defendants' sole witness, testified first that the verbal understanding among those who took part in the transaction (he, plaintiff and their parents) was that the plaintiff would take hold of the property under the conveyance and "work out" the indebtedness and save the home property and whatever else he could for the family and finally he confined his statement to the assertion that the understanding was that the plaintiff would so save the home, if possible.

Thus the difference in the testimony of these brothers is that the plaintiff said that he had the understanding with his parents at the time of the conveyance to him to save, if possible, the mortgaged home for his mother so long as she should live, whereas his brother testified for the defendants that the understanding was that the plaintiff would save the home, if possible, *for the family.*

The defendants' witness, the plaintiff's brother, testified further that it was at his suggestion that the conveyance was made to the plaintiff because the latter was unmarried and trained in the law and that he suggested the stated amount of the cash consideration which he quaintly said was "just an ordinary amount," and that in fact no cash

consideration was paid. This the plaintiff contradicted, claiming to have paid some cash and to have taken credit for other sums which he had saved during army service and in his recent employment before returning home and had advanced to his parents. On the other hand, defendant's witness had himself purchased and accepted the conveyance of plaintiff alone of the gin lot, the title to which had been approved by his attorney. We are unable to find the weight of this conflicting parol evidence and in view of our conclusion on the whole case it is unimportant. Certainly we do not find that it is susceptible of only one reasonable inference. The admissibility of the parol evidence in this connection will be later discussed.

It is thus seen that the defendants made no effort to sustain their contention set up in the counterclaim as to the ineffectiveness of the deed attacked to convey good title to the grantee, the plaintiff, to the real estate other than the home. Indeed, the testimony of their only witness was aimed solely at the plaintiff's title to the home, he asserting that the latter orally agreed at the time of the conveyance to save it for the family.

And in our opinion the documents shed no real light upon the controversy. It was natural for the local bank to require Mrs. All to join her son in the execution of the mortgage over the home and other property for it was her indebtedness that was thereby secured. She later practically repudiated this joint execution by her in the instrument which she executed at the request of Southern Cotton Oil Company, as we have seen, and thereby clearly represented by formal instrument under seal that she had and claimed no interest in or title to any of the property formerly conveyed by her to the plaintiff. It is inferable from the record that it was this fortunate sale of the gin lot, under improved financial conditions, which released the home from mortgage lien and made occasion for the change of mind of Mrs. All and prompted her to execute the will quoted above.

The latter was clearly inadmissible upon the question of the existence of the alleged trust. We can conceive of no more dangerous doctrine in the law of real estate than that a grantor in a deed can later (here about fifteen years afterward) affirm in his last will that the deed was invalid for lack of consideration or other cause and proceed to devise the property to another who should thereupon lay claim to it and offer as proof such a will and its recitals. No exact precedent has been submitted to us and we have found none in our investigation, but the principle of the inadmissibility of subsequent declarations of a grantor is illustrated and applied in many decisions.

"It has been held that a grantor's declaration and acts in his own interest, after the deed is delivered, are not admissible to indicate his intention in delivering the deed, since they are either hearsay and made at a time too remote from the occurrence to which they relate, or are self-serving declarations." (Citing many authorities.) Ann. Cas., 1916-E, 713.

"The general rule that parol evidence is inadmissible to vary or contradict the terms of a written contract applies in all its strictness to actions involving deeds. In the construction of a deed, all prior negotiations must be taken as merged in that instrument, the conclusive presumption being that the whole engagement of the parties and the extent and manner of it were reduced to writing. Parol reservations or exceptions made either at or before the making of a deed are merged therein and cannot be allowed to alter or modify its legal effect. Clearly, an estate granted by deed cannot be expanded by recitals or statements of the grantor made in a later deed to the injury of an intervening title. Parol evidence is not admissible to contradict a deed and to show that the terms upon which it was made or its objects and purposes were different from those implied in the instrument. *Deeds executed as security for the payment of debts are excepted from this rule.* Parol evidence is generally held to be inadmissible on behalf of the grantor or

his heirs where the purpose or effect of the evidence is to invalidate the deed." (Emphasis added; its importance will be shown hereinafter.) 16 Am. Jur., 686, 687.

The Statute of Limitations, purportedly relied on to some extent by both sides, is clearly inapplicable to the facts as disclosed by the record. As has been stated, plaintiff returned to the home of his parents in 1922, and remained there, meanwhile marrying, until the expiration of almost ten years, moving elsewhere in 1932. And he testified that Mrs. Prillaman returned there to live in 1935, her witness said 1931. The only time that there could have been any adverse possession, by one or the other, was between the time of the death of Mrs. All in 1937, and the commencement of this action in 1939, a period of about two years, when Mrs. Prillaman appears to have held possession of the home property adversely to the plaintiff.

Mention has been made of the conflict in evidence with respect to the payment of the recited cash consideration. However, we know of no authority permitting a parol attack upon the fact of a consideration stated in a formal deed under seal, as this was, for the purpose of destroying the validity of the instrument, in the absence of at least alleged fraud or acts from which it can be inferred. There must be some object in the inquiry other than the invalidating of the deed for lack of consideration. See the authorities in the annotation in 68 L. R. A., 929. From *Cook v. Cooper,* 59 S. C., 560, at page 564, 38 S. E., 218, at page 219, the following is quoted: "This witness was examined by the defendants to prove the execution of said deed. During his cross examination by plaintiff's attorneys he was asked whether the consideration set out in the deed was paid. Upon objection by defendants' attorneys, his honor ruled that the question was not competent. The ruling of the circuit judge must be considered with reference to the issue before the court at the time it is made, and not the state of facts thereafter developed. Fraud was not made an issue by the pleadings, nor had any testimony been offered

tending to show fraud at the time the presiding judge was called upon to rule on the competency of the question. The only effect which the testimony could have had would have been to show that the deed was without consideration. This could not be shown, for the reason that a seal imports a consideration." *Brown v. Brown,* 44 S. C., 378, 22 S. E., 412; *Whitmire v. Boyd,* 53 S. C., 315, 31 S. E., 306; *Koster v. Welch,* 57 S. C., 95, 35 S. E., 435.

And from *Bank of Charleston v. Oates,* 160 S. C., 188, 158 S. E., 272: "It seems to us, however, that the decision of the case must rest upon this principle, that, while one who signs an instrument of writing under seal is allowed to show failure of consideration, he is not allowed, in the absence of fraud, to show that such instrument was without consideration, the reason being that the seal, of itself, imports a consideration. *Carter v. King,* 11 Rich., 125; *Brown v. Brown,* 44 S. C., 378, 22 S. E., 412; *Whitmire v. Boyd,* 53 S. C., 315, 31 S. E., 306; *Koster v. Welch,* 57 S. C., 95, 35 S. E., 435; *Cook v. Cooper,* 59 S. C., 560, 38 S. E., 218; *Baynard v. Ulmer,* 153 S. C., 100, 150 S. E., 610. It is hardly necessary to point out that this principle is not in conflict with the provisions of section 355 of the Code of Civil Procedure since it is available not only to the assignee of a mortgage, but to the original mortgagee as well. See *Koster v. Welch, supra.*"

Similar strong authorities are cited and relied upon by appellant, but we do not think they encompass the problem now presented. Respondents' argument is, quoting their brief, "that *any evidence* is admissible in a suit to establish or enforce a constructive trust (their effort here —interpolated) which tends to prove or disprove any of the elements of such a trust or any of the facts and circumstances giving rise to it provided such evidence is relevant and material." It is not necessary to go as far as that in this feature of the controversy, but we are of the view that pertinent testimony of absence of consideration, despite the recital thereof and the existence of the seal, and parol evi-

dence of the alleged verbal "understanding" were admissible in this case, not to destroy the deed or invalidate it, but as evidence of the contended trust character of the conveyance and as tending to establish that while the deed was effective to pass the legal title to the grantee, he received it upon the alleged constructive trust asserted by respondents.

Brief but convincing disposition was made of a similar problem in *Hornbeck v. Crawford,* 1929, 130 Or., 230, 279 P., 870, at page 872, *infra,* where the Court said: "While it was not competent to contradict the acknowledgment of the receipt of the consideration stated in the deed, in order to defeat the conveyance or to affect its validity as a conveyance in passing title (see 3 Washburn on Real Property (5th Ed.), p. 592), such evidence being only admissible in actions to recover the purchase money, or perhaps in actions to recover damages for a breach of a covenant contained in the deed, it was admissible in conjunction with other evidence of fraud in proof of a constructive trust or a trust arising *ex maleficio.*" See 65 C. J., 4912.

To the same effect is *Kochorimbus v. Maggos,* 1926, 323 Ill., 510, 154 N. E., 235, 238, where it was said: "While neither an express trust nor a resulting trust can be created by parol agreement, yet where the transaction is such that at the moment the title passes either a resulting or constructive trust would arise in the absence of a parol agreement, such an agreement will not prevent a trust arising. *Smith v. Smith,* 85 Ill. 189; *Wallace v. Carpenter,* 85 Ill. 590; *Williams v. Brown* 14 Ill. 200. The intention of the parties in the premises may be shown by proof of the parol agreement in accordance with which the title is taken. *Furber v. Page,* 143 Ill. 622, 32 N. E. 444."

However, there is no dispute as to the fact or validity of the consideration moving from the grantee by his assumption of the payment of the very large mortgage indebtedness upon the property conveyed. In this case, it was at least to some extent a costly consideration to plaintiff, for his testi-

mony is uncontradicted that he made payments upon this mortgage indebtedness and some of the funds so applied were derived from his compensation as superintendent of schools at Allendale, where his wife was also employed as a teacher. He is likewise without contradiction in his estimate that the mortgage debts amounted to several times the value of the property at the time of the conveyance.

Both plaintiff and defendants moved for direction of the verdict on grounds which need not be set forth. The Court granted the motion of the defendants stating that the claim of the latter "that the deed from their mother to the plaintiff was embodied with a trust" was sustained and that as between the grantee and the grantor the former held the title as trustee and the Court further held that the defendants had established a "family agreement" pursuant to which the conveyance was made; that the evidence bore only one reasonable inference, that the deed was a trust deed, and it was held that the nature of the defendants' case invoked the jurisdiction of equity which is more liberal in the admission of testimony than is a law Court; and the Court went on to say that the verdict was directed within the powers of the Court as a chancellor, he declining to submit any issue to the jury.

In the order it was undertaken to hold that the deed of September 4, 1922, under which plaintiff claimed, "insofar as it relates to the property mentioned and described in the complaint, be, and the same is hereby, declared to be a trust deed, * * * under the terms of the family agreement that he (plaintiff) was to, in fact, be the owner in name only, and only as trustee for his mother," and the defendants were awarded the possession of the property described in the complaint, the former residence of Mrs. All as aforesaid.

Thus the learned trial Judge failed to make any disposition of defendants' claim to the other town property and the farm lands included in the deed, other than by implication, confining the verdict and judgment to the home.

Plaintiff's motion for new trial was formally refused and this appeal by him followed. The defendants, now respondents, submitted grounds to sustain the judgment of the Circuit Court, some relating to adverse possession, which in our opinion have been properly disposed of in what has already been said, and the others are we think included in the circuit judgment.

The appellant has submitted many exceptions from which he has stated and argued numerous questions, all of which have received attention, but we do not think that it is necessary to consider them separately.

In our study of the record and particularly the remarks of the trial Judge, we are impressed with the sincerity of his views, but believe from what he said that he was influenced to err by the well-recognized practice, stated generally, that a deed absolute on its face may be shown by parol to have been intended as a mortgage; but this is an exception rather than a rule, hence our added emphasis in the above quotation from American Jurisprudence. See the very exhaustive annotation in L. R. A., 1916-B, pages 18 *et seq.,* and 107, and the numerous citations of our cases. This practice is without application here.

Of course every Court, especially as is often said a Court of equity, is zealous to find and apply the truth in all controversies so that universal justice will result, but another *desideratum* is the security and repose of real estate titles, whence one of the reasons of the parol evidence rule and for the Statute of Frauds. Industrious counsel in this case have supplied us with many authorities which have been consulted, but we think those above referred to and hereinafter mentioned are conclusive of the issues.

In our view this case is clearly not one in which the "family settlement" doctrine, relied upon below, can properly be applied. Cases involving it called to our attention were of intestate estates or the like where conduct of participants created equities which were protected by the

Court. Here, according to the testimony more members of the family were absent from the transaction than present; only appellant, his brother and their parents can be said to have in any manner participated; and the "equities" seem to us to be with appellant rather than respondents.

*Smith v. Williams,* 141 S. C., 265, 139 S. E., 625, 54 A. L. R., 964, is an interesting case wherein the Circuit Court (the present Chief Justice of this Court) upheld a family agreement relating to realty. But this Court on appeal put its affirmance upon the ground of estoppel and discussed the whole question at great length. See also the deprecatory reference to the doctrine in *Alderman v. Alderman,* 178 S. C., 9, 181 S. E., 897, 105 A. L. R., 102.

However, the brunt of respondents' argument is that the conveyance to appellant under the circumstances present and the alleged verbal understanding as to the home, related above, created a constructive trust as to it, and emphasis is laid upon the alleged fiduciary or confidential relation existing between the parties to the deed, it being from mother to son.

Section 9041 of the Code of 1932 requires that the creation of a trust in real estate shall be evidenced in writing, but the following section recognizes that that part of the Statute of Frauds is subject to the exception of trusts which "shall or may arise or result by the implication or construction of law."

Interesting in this connection is the opinion of this Court in *Kinsey v. Bennett,* 37 S. C., 319, 15 S. E., 965, 967, by Chief Justice Henry McIver, in which the Court declined to consider the deed there involved as in trust, and said: "It will be observed that there is no allegation in the complaint of any fraud in obtaining the deed, the only fraud alleged being in the manner in which the alleged trust was discharged; and, of course, until the trust was established, it would be irrelevant to inquire into the mannner in which the alleged trust, which had never been established, had been

discharged." See also the following in the opinion in *Smith v. Williams, supra,* 141 S. C., page 277, 139 S. E., page 628, 54 A. L. R., 964: "But the difficulty here encountered is that the unsigned memorandum cannot be given any legal effect, either to enlarge the conveyance of the deed or to constitute a declaration of trust, as under the statutes (Civil Code 1922, §§ 5453, 5454) all declarations or creations of trust must be in writing which must be signed by the parties so making or creating the same, except only where arising or resulting from implication of law."

Constructive trusts arising out of oral agreements by grantees at the time of the conveyances, out of the surrounding circumstances and from unconscionable conduct on the part of the grantee in subsequently claiming the absolute ownership of the property, have been the subject of a great deal of litigation in other jurisdictions and many annotations will be found in the various annotated series of reports, the later ones in American Law Reports, Volumes 35, 45, 80, and 129, beginning at pages 280, 851, 195, and 689, respectively.

Likewise the subject is treated in 26 Ruling Case Law, Trusts, Sections 78 *et seq.,* and 65 Corpus Juris, Trusts, Sections 14 and 215 *et seq.* Respondents' able counsel depends largely upon the latter text and has quoted freely from it in his brief, on which account it has been carefully considered. From it are taken the following stated principles which may be fairly said to be applicable in more or less degree to this case. Constructive trusts have none of the elements of an express trust, but arise entirely by operation of law without reference to any actual or supposed intention of creating a trust and are resorted to by equity to vindicate right and justice or frustrate fraud. 65 C. J., 225.

"The mere violation of a parol promise made by a grantee of land to the grantor thereof, to hold such land in trust or for a specific purpose, or to convey it back to the grantor or to a person designated or to be designated by him, does not

create a constructive trust in the grantee, in the absence of fraud in procuring the conveyance to him, since the trust, if any, is an express one and is not enforceable under the statute of frauds; and, a *fortiori,* a simple avowal of acquisition of property for the benefit of another, or of an intention to convey it to another, not made as a promise or inducing the conveyance, will not give rise to a constructive trust. Such a trust will rise, however, out of such a promise made in connection with the receipt of the legal title to property, provided the grantor's purpose is an honest one, where, in addition to the parol agreement or its breach, there is some element of fraud or bad faith which makes it inequitable that the grantee should hold the title absolutely and discharged of any trust, as where at the time the promise is made the grantee does not intend to perform it, or it is intentionally false, or where confidential relations exist between the parties and there is no other consideration for the conveyance except the promise, or where the promise is the inducing cause of the conveyance, no other consideration being given, and is relied upon by the grantor." 62 C. J., 470, 472.

"One is not chargeable as a trustee, however, on account of a fiduciary relation unless he has been guilty of some wrong; and so ordinarily no trust arises, on account of a confidential relation, where there is no fraud or abuse of confidence or influence." 65 C. J., 479.

"Persons in family relations, such as those of husband and wife, or those of parent and child, or those of brothers, sisters, or brothers and sisters, and others bearing a family relation to one another, are also ordinarily to be regarded as in a confidential relationship within the meaning of the rule; but they are not necessarily so." 65 C. J., 485, 486.

"It has frequently been laid down as an established rule that a mere preponderance of the evidence is not sufficient to prove a constructive trust, but that it must be established by evidence which is clear, definite, unequivocal, and satis-

factory, or such, as has been said, as to lead to but one con-
clusion, or as to leave no reasonable doubt as to the existence
of the trust; and where the evidence is not of such charac-
ter, or, *a fortiori,* where it raises grave doubts as to the ex-
istence of a trust or of any element essential to its creation,
a decree is properly entered against the person seeking to
establish the trust. Positive and uncontradicted testimony
of the existence of facts sufficient to give rise to a construc-
tive trust need not necessarily be adopted as true by the
trial Judge, if he is not convinced thereby; and testimony
given long after the transaction in question, and after the
parties concerned are dead, although positive and not con-
tradicted by other testimony, is to be regarded with serious
misgivings." 65 C. J., 493, 494.

Particularly applicable to the rather meagre facts be-
fore us is the following from 26 R. C. L., 1239:
"According to some authorities the mere refusal to
execute the trust suffices to establish fraud, but the true
rule in cases of this class seems to be that there must have
been an original misrepresentation by means of which the
legal title was obtained; an original intention to circumvent,
and get the better bargain, by the confidence reposed, and
that in the absence of some clear evidence of fraud, imposi-
tion or mistake at the time of the execution of the convey-
ance, the grantee's subsequent repudiation of the alleged
parol promise is not a fraud against which a court of equity
can relieve. The mere breach of an oral agreement, standing
alone, though often a moral wrong, is not sufficient to estab-
lish that fraud in procuring the title which is requisite to
render the grantee a trustee *ex malificio* although the fact of
such breach may, of course, be looked to, in connection with
the other circumstances of the case, as sometimes constitu-
ting one of several links in a chain of facts going to prove
fraud. *If this were not so, the statute of frauds would prac-
tically be repealed, because no case can arise in the courts
under it except where such a breach is charged, other than*

*cases of fraud, either positive or constructive."* (Emphasis added.)

Following the foregoing there is presented in the text what we think is a proper view, with citations in the footnotes of sustaining authorities, that where a child *procures* the conveyance of property from a parent upon his promise to hold it in trust for the benefit of himself and the grantor's other children, equity will enforce such a trust despite the Statute of Frauds, upon the familiar formula that Courts will not permit the statute to shield a fraud; but the facts before us now utterly fail to establish such a case. It is said at page 1242: "In order to establish such a trust, however, the facts must be proved beyond reasonable question * * * whatever moral obligation there may be, no legal obligation rests upon him." Again at page 1251: "It has been held, however, that no parol trust will be ingrafted on a legal title, which the instrument of conveyance makes absolute on its face, unless with the greatest caution, and where the fraud necessary to create the trust is established by clear and convincing proof. And in such a case, as a deed absolute in form raises a strong presumption against the existence of a trust; evidence sufficient to overcome it must be greater than a mere preponderance."

The verbal "understanding" testified to by respondents' only witness, to the effect that the appellant agreed at the time of the conveyance to save from the mortgage liens the home, if possible, for the family, while admissible in evidence under their theory of the creation in equity of a constructive trust, cannot be the basis of a legal *obligation* on the part of appellant because it was void under the Statute of Frauds; it is fraud or abuse of a confidential relation which gives rise to a constructive trust under such circumstances, without giving effect as such to the parol promise. 35 A. L. R., 286.

"Hence, by the weight of authority the mere failure of the grantee to perform his oral promise to hold property

upon trust affords no basis for a constructive trust." 35 A. L. R., 288. "Where no deception was employed by the grantee, who accepted an absolute conveyance of the property, made for the express purpose of enabling him to make sales, pay off an indebtedness, and, if possible, save something out of the proceeds for the grantor, he will not be held a trustee *ex maleficio. Braun v. First German E. Lutheran Church,* 1901, 198 Pa., 152, 47 A., 963." "So where the grantor, without accident or mistake or fraud on the part of the grantee in procuring the conveyance, deeded property to her son for the purpose of enabling him to defend the title against a threatened suit, with the understanding that he would hold it for her benefit, there is no trust *ex maleficio. Jones v. Van Doren, C. C.,* 1883, 18 F., 619." 35 A. L. R., 302, 303.

The degree of proof required has been mentioned above in the quotations from the texts. It is interesting to note the adjectives used by various Courts appearing in the annotations just mentioned, with reference to the required evidence, such as clear, satisfactory, convincing, full, free, received with great caution, definite, unequivocal, precise, decisive, indubitable, overwhelming, strong, unmistakable, capable of but one conclusion, a greater weight than a mere preponderance. *Boone v. Lee,* 1918, 175 N. C., 383, 95 S. E., 659; 35 A. L. R., 286, 287; 45 A. L. R., 852; 80 A. L. R., 198, and 129 A. L. R., 692.

Besides the A. L. R. annotations referred to, respondents expressly cite in their comprehensive brief a number of cases from other jurisdictions which we have read. One of them is the Illinois decision of *Catherwood v. Morris,* 345 Ill., 617, 178 N. E., 487, 494, which was a very much stronger case for the finding and enforcement of a trust than this, and also involving a conveyance from parent to his lawyer son, but the Court declined to follow the suggested theory and said (applicable here) :

"It is a transfer from *cestui que* trust to trustee, client to attorney or ward to guardian, and not a transfer from trus-

tee to *cestui que* trust, attorney to client or guardian to ward, that is presumed to be fraudulent. This distinction was clearly made in *McLaughlin v. McLaughlin*, 241 Ill., 366, 89 N. E. 645, 647, where it was said: 'While a child executes a deed to the parent, a client to his attorney, or a ward to his guardian, if the good faith of the transaction is challenged the law casts upon the parent, attorney, or guardian the burden of establishing the good faith of the transaction. No such requirement exists, however, where a parent executes a deed to a child, unless the evidence establishes that the parent, by reason of old age or other infirmity, has become subject to the dominion of the child. In the case of a deed from a child to a parent the presumption of undue influence arises as a matter of law; but in case of a deed from a parent to a child no such presumption of law arises; but, if such presumption arises, it must arise as a presumption of fact, based upon the proof that the natural dominion of the parent over the child has ceased to exist, and that by reason of the weakness of the parent and the strength of the child the will of the parent has been overcome by the will of the child, and that the act of the parent was not his, own act, but the act of the child.'

\* \* \*

"Does the evidence establish, clearly and convincingly, that appellee occupied a fiduciary relationship to his father at the time the property was transferred to him, so that the transfer is presumed to be the result of fraud or undue influence and a constructive trust arises? We think not. Appellee did not act as attorney for his father, and before the transfer he had no part or share in the managing of his father's property, and his father never consulted with him or asked or obtained his advice about business matters. In fact, the record shows that down to a time shortly before the father· suffered the paralytic stroke appellee turned over to his father all of his surplus money for investment, and that the father gave appellee notes bearing interest for the

money so turned over to him. Clearly, so far as the relations between appellee and his father in connection with business are concerned, the father was the dominant party, and appellee was not in a position of having influence over the father. It is true that the father had confidence in appellee or he would never have made the transfer of the property to him, but it does not follow that there was such a confidential and fiduciary relationship as makes the transfer from the father to appellee presumptively fraudulent. Proof to establish a constructive trust must be clear, convincing, and so strong, unequivocal, and unmistakable as to lead but to one conclusion. If the evidence is doubtful or capable of reasonable explanation upon a theory other than the existence of the trust, it is not sufficient to support a decree declaring and enforcing the trust. *Winkleman v. Winkleman,* 307 Ill. 249, 138 N. E. 637; *Streeter v. Gamble,* 298 Ill. 332, 131 N. E. 589, 23 A. L. R. 1485.

\* \* \*

"Appellant makes the contention that, since appellee admits that he took the property under a 'moral' obligation, he in effect admits that he took it under such circumstances that he ought not, according to the rules of equity and good conscience, hold and enjoy the entire beneficial interest in the property, and that it is in just such cases of moral obligation that courts of equity raise trusts by operation of law. In the state of New York, which has apparently recognized that constructive trusts may be raised under circumstances that would be insufficient to raise such trusts under our decisions, it is recognized that there is a distinction between legal and moral obligations in this respect. In *Trustees of Amherst College v. Ritch,* 151 N. Y. 282, 45 N. E. 876, 887, 37 L. R. A. 305, the court said: 'When it clearly appears that no trust was intended, even if it is equally clear that the testator expected that the gift would be applied in accordance with his known wishes, the legatee, if he has made no promise, and none has been made in his behalf,

takes an absolute title, and can do what he pleases with the gift. Whatever moral obligation there may be, no legal obligation rests upon him.' "

The case of *Armstrong v. Armstrong,* 1930, 181 Ark., 597, 27 S. W. (2d), 88, 89, is also cited; it states what is probably a sound rule which, however, is not applicable to the instant case for the latter lacks requisite facts, as follows: "It is well settled that equity impresses a constructive trust in favor of those entitled to the beneficial interest against one who secures the legal title by means of an intentional false verbal promise, who held the same for a certain specified purpose and having thus obtained title he retains and claims the property as absolutely his own." (Citing earlier Arkansas cases.)

Respondents also submit the rule of Perry on Trusts and Trustees (7th Ed.), page 267, which is found cited with approval in *Howard v. Howe,* 7 Cir., 1932, 61 F. (2d), 577, 579, as follows: "If one party procures the legal title to property from another by fraud or misrepresentation or concealment, or if a party makes use of some influential or confidential relation which he holds towards the owner of the legal title, to obtain such legal title from him upon more advantageous terms than he could otherwise have obtained it, equity will convert such party thus obtaining property into a trustee."

But the factual showing of respondents is far short of the legal authorities urged upon us; they are rich in legal precedents but fatally poor in facts. There is no allegation or proof of any promise fraudulently made by appellant to induce his mother to convey the property to him or that he in any manner overreached her or abused any confidential relation which may have existed between them. There is no allegation in the answer of facts from which fraud can be implied and none in the evidence. The able and conscientious Circuit Judge who tried the case was evidently conscious of the dearth of needed allegations in the pleading for he re-

peatedly referred to respondents' allegations in the evidence, but both we think greatly miss the mark which the Judge thought and held that they reached. And this we think is the key to this troublesome controversy.

The texts and cases from other Courts have been dealt with at greater length than would have been but for the fact that respondents have so largely depended upon them. In their full brief they cite only one South Carolina case upon the subject, *Bank of Williston v. Alderman,* 106 S. C., 386, 91 S. E., 296, which involved personal property, money paid by mistake, and may therefore be said to be inapplicable to the instant case, but the principles stated by the Court are in conformity with the foregoing authorities.

Other cases from the Courts of last resort of this State may be found by reference to West's South Eastern Digest, Vol. 33, Trusts. Upon consideration of them it will be noted that our Courts have not always been careful of the terminology and to distinguish between resulting trusts (a frequent example of which occurs where one pays the purchase price and the conveyance of property is made to another) and constructive trusts, but as indicated above there has been uniform accuracy in the application of the principles enunciated generally elsewhere and the rule, controlling in this case, of the evidence necessary to establish a constructive trust has been consistently followed.

"It is well settled in this state that the facts from which the court would infer a resulting trust may be established by parol testimony, but it is also settled that such testimony, to warrant such inference, must be clear and convicing. *Taylor v. Mayrant,* 4 Desaus. [505], 516; *Billings v. Clinton,* 6 S. C. [90], 102; *Ex parte Trenholm,* 19 S. C. 126; *Catoe v. Catoe,* 32 S. C. 595, 10 S. E. 1078; *Jones v. Hughey,* 46 S. C. [193], 196, 24 S. E. 178; *Gaines v. Drakeford,* 51 S. C. [37], 38, 27 S. E. 960. If the object of the testimony was to show a resulting trust in the land in favor of Sallie Rogers, it certainly is far from being clear and con-

vincing." *Rogers v. Rogers,* 52 S. C., 388, 29 S. E., 812, 813.

"The rule of law is familiar that, to establish an equitable title or a resulting trust against one holding the legal title, the evidence must be clear and convincing. *Catoe v. Catoe,* 32 S. C. 595, 10 S. E. 1078; *McMillan v. McMillan,* 77 S. C. 511, 58 S. E. 431; *Bell v. Edwards,* 78 S. C. 490, 59 S. E. 535. The evidence in this case is very far from clear and convincing." *Feaster v. Kendall,* 80 S. C., 30, 61 S. E., 200.

The recent case of *Legrande v. Legrande,* 178 S. C., 230, 182 S. E., 432, 435, 102 A. L. R., 582, involved the attempted creation of a trust in life insurance proceeds and the Court remarked as follows, which may be said to be applicable here by analogy: "In connection with the foregoing views, it may be added that, while a trust of this character may be created by parol, to establish same the evidence must be clear, definite, and convincing."

*Hutto v. Hutto,* 187 S. C., 36, 196 S. E., 369, 371, had to do with an alleged resulting trust and this Court used the following language, equally true of a claimed constructive trust: "From these authorities, it is settled beyond question that proof of the payment of the purchase money, or some definite portion of it, by the beneficiary, *must be clearly and unmistakably shown."* (Emphasis added.)

The testimony in this case to the effect that the parol understanding was that the appellant should save the parental home, if possible, for the family is not explained. It is susceptible of the inference that it was intended that the device of the conveyance would provide the escape of the property from the claims of creditors of Mrs. All who did not have mortgage liens upon it. If that was the object, she and her devisees cannot invoke the aid of equity to recover the property from the grantee, the appellant. "The resultant implied agreement, or trust, is the child of the law, and equity will support its existence and enforce its purposes.

It seems but elementary to say that the law, in the exercise of its creative power, will not use the faulty material of fraudulent intent, or create a contractual structure which shelters its own masked enemy, fraud. Where the law does not attack, it will not consort with fraud, but will leave it alone." *Flesner v. Cooper*, 1917, 62 Okl., 263, 162 P., 1112, 1117. "Accordingly, a parol trust cannot be ingrafted upon a deed made for the purpose of hindering, delaying, or defrauding creditors. *Leland v. Chamberlin*, 1909, 56 Tex. Civ. App. 256, 120 S. W. 1040." 35 A. L. R., 287.

To the same effect is *Jolly v. Graham*, 222 Ill., 550, 78 N. E., 919, 920, 113 Am. St. Rep., 435, where it was said: "The law will not permit a party to deliberately put his property out of his control for a fraudulent purpose, and then, through intervention of a court of equity, regain the same after his fraudulent purpose has been accomplished." See also *Hornbeck v. Crawford*, 1929, 130 Or., 230, 279 P., 870, *supra*.

For the reasons above set forth it is our view that the Circuit Court erred in refusing appellant's motion for the direction of verdict and in granting that of respondents, and further that appellant is likewise entitled to judgment for the possession of the property described in the complaint and for judgment upon the counterclaim, for the entry of which the case is reversed and remanded to the Court of Common Pleas.

Reversed.

MR. CHIEF JUSTICE BONHAM, MR. ASSOCIATE JUSTICE FISHBURNE, and CIRCUIT JUDGES PHILIP H. STOLL and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.