## 15501

DOMINICK *ET AL.* v. RHODES *ET AL.*

(24 S. E. (2d), 168)

140

*Messrs. Mays & Featherstone,* of Greenwood, Counsel for Appellants,

*Mr. W. H. Nicholson,* of Greenwood, Counsel for Respondent,

February 8, 1943.

The opinion of the Court was delivered by CIRCUIT JUDGE L. D. LIDE, ACTING ASSOCIATE JUSTICE:

The parties to this cause are the sole heirs at law of Ira M. Dominick, deceased, and this action, which was commenced in the Court of Common Pleas for Greenwood County on January 2, 1940, relates to the settlement of his estate, including an accounting and the partition of real property. The defendant is the widow and the plaintiffs are the only children of the intestate. The suit involves 1,419

acres of farm land and a warehouse and lot in Coronaca, and also claims of the sons against their father's estate for their shares of their mother's personal estate; the rental value of the lands inherited from their mother; and the proceeds of sale of certain of their lands, timber and topsoil. The suit further involves claims of the sons for lesser amounts against their stepmother as administratrix in the settlement of their father's estate, and against her individually for certain rents.

The cause was referred to the Master who filed a report in April, 1941, and thereafter Judge Thurmond filed a decree, dated November 6, 1941, overruling the Master in some respects and remanding the cause to him for further testimony as to certain questions. The Master's second report was filed February 4, 1942; and on April 23, 1942, Judge Henderson filed his decree adjudicating some of the issues. This decree was definitized in certain particulars by his supplemental decree dated July 2, 1942. The cause comes to us upon the appeal of the plaintiffs from the decrees of both the Judges. As will hereinafter appear, several of the issues involved in the cause have already been finally adjudicated, but there remain for our determination certain controversial issues which we will state later.

Counsel for the respective parties very properly agreed upon a statement of the basic facts, and this agreed statement is set forth in the Transcript of Record, thus simplifying the issues before us. We will, therefore, recite these agreed facts, with some abbreviation, quoting excerpts from the statement.

Ira M. Dominick died intestate July 11, 1936, leaving as his only heirs at law his widow, Kathleen Dominick (now Kathleen Dominick Rhodes by subsequent marriage), and his two sons by a former marriage, John Ryan Dominick and Drayton M. Dominick, who will frequently be referred to in this opinion simply as Ryan and Drayton. After the death of Ira M. Dominick both of his sons were adjudged

by the Probate Court to be *non compos mentis,* and an uncle, T. A. Dominick, was appointed committee for each of them. The adjudication as to Drayton was made April 1, 1937, and as to Ryan on December 4, 1939, Drayton was confined in the State Training School at Clinton before he reached his majority, and is conceded to have been *non compos mentis* continuously since that time. Ryan has never been confined, and is now residing with his stepmother on the estate lands, "the same place at which he resided with his father from the time of his birth until his father's death." His committee is accounting for his board.

The lands in question were a part of the lands of Estate of G. M. Kinard, and descended by inheritance, one-third to his widow and two-thirds to his only daughter, Mamie Lee Dominick, wife of Ira M. Dominick and mother of the plaintiffs. Mrs. Kinard conveyed her interest to her son-in-law, Ira M. Dominick; and the daughter, Mamie Lee Dominick, died intestate June 11, 1925, leaving as her only heirs at law her husband and her two sons. The title to these lands, some 5,600 acres was then vested in the parties in the following proportions: Ira M. Dominick 5/9 J. Ryan Dominick 2/9, and Drayton M. Dominick 2/9.

Ira M. Dominick administered on the estate of his first wife, Mamie Lee Dominick, and was discharged by the Probate Court on February 28, 1928. In the final settlement, including the proceeds of sale of personal property and some farm lands, he filed a return showing a net balance of $10,302.07, for distribution in equal shares to himself and his two sons; and he filed two receipts, one signed by Ryan for $3,434.02, covering his share of this balance. The other receipt was signed by Ira M. Dominick himself as guardian for Drayton who was then nineteen years of age, purporting to show receipt for a like amount covering Drayton's interest, Ira M. Dominick having been appointed guardian for Drayton by the Probate Court; and Ryan was surety on the bond. However, Ira M. Dominick never made

a return to the Court of his acts and doings as guardian, nor did he make any accounting to his ward.

In 1930 a suit was brought in the Court of Common Pleas for partition of the Kinard lands which descended in part from Mamie Lee Dominick, and pursuant to a decree made February 19, 1931, 1,599 acres was allotted to Ira M. Dominick, 1,279 acres to Drayton and 741.1 acres to Ryan. We quote the following from the agreed statement: "Ira Dominick had the exclusive management, control and cultivation of all the lands descended from Mamie Lee Dominick excepting parts which were sold off from time to time from the death of Mamie Lee Dominick in 1925 until his death in 1936. The partition of the lands in 1931 did not in any way change his method of managing and cultivating the lands as exclusively his own. The evidence does not indicate that any accounts or records of any kind were kept by Ira M. Dominick of these farming operations."

From time to time Ira M. Dominick sold certain lands, and topsoil and timber from lands, owned by Drayton, as shown on a schedule attached to the Master's first report. And it is conceded that Drayton has a valid claim against the estate for the principal of these items and for $3,434.02 due him from his mother's estate, subject to certain credits shown on the schedule and another credit of $150.00 shown in the Master's second report. The question of whether certain interest should be added is one of the issues in this appeal. And we quote the following from the agreed statement: "A number of sales of the lands of John Ryan Dominick were negotiated by Ira M. Dominick and the proceeds of sales collected by him. The deeds in each instance were signed by John Ryan Dominick without order of Court, John Ryan Dominick not having been adjudged incompetent at that time. Ira M. Dominick also sold and collected for certain timber and topsoil from lands in which Ryan had an interest prior to the partition in 1931. There is no evidence that Ira M. Dominick paid over to or

otherwise accounted to Ryan for the proceeds of these sales of lands, topsoil and timber." These sales are shown as separate items in a schedule attached to the Master's first report.

The defendant, Kathleen Dominick Rhodes, has been in the continuous possession of the Ira M. Dominick estate lands since his death, and the Master in his first report found that she should account for rents for 1937, 1938 and 1939 in a certain sum, which was confirmed by Judge Thurmond, and no appeal taken. And the rents for 1940 and 1941 have heretofore been finally adjudicated. The rent for 1942, however, is one of the controversial issues. The plaintiffs had offered to pay sixteen bales of cotton (meaning, we suppose, if the property were turned over to them), and the Master in his second report had fixed the rental value for 1942 at fourteen bales, but Judge Henderson reduced it to ten bales. Plaintiffs appeal from Judge Henderson's ruling in this respect, and contend that the rent should be sixteen bales.

John Ryan Dominick did not testify in the proceeding in the Probate Court in which he was adjudged *non compos mentis,* and a committee appointed, nor did he testify in the instant suit.

There are eleven exceptions, nine to the decree of Judge Thurmond and two to the decrees of Judge Henderson. The exceptions to the decrees of Judge Henderson relate only: (a) To his holding that losses of Ira M. Dominick in farming the lands of Drayton exceeded the amount of interest on certain funds of Drayton held by him, and hence such interest should not be charged; and (b) to his holding that rent chargeable against the defendant, Mrs. Rhodes, for 1942, should be ten bales of cotton instead of sixteen bales, or fourteen bales as found by the Master.

Referring to the nine exceptions to the decree of Judge Thurmond, it should be observed that the third exception was not argued, and it is admitted that the ninth exception

is immaterial. Certain other exceptions raise the most important issues before the Court, and that relates to the liability, if any, of the estate of Ira M. Dominick to J. Ryan Dominick; and some exceptions relate to the matter of liability of the estate to Drayton M. Dominick.

All of these issues are stated in the brief of appellants as follows:

"1. Was J. Ryan Dominick *non compos mentis* before he reached his majority? If not, was he of subnormal mentality?

"2. Is the Estate of Ira M. Dominick due to account to J. Ryan Dominick for funds of J. Ryan Dominick traced into his hands?

"3. Is the Estate of Ira M. Dominick entitled to a credit against J. Ryan Dominick for board and lodging?

4. "Is the Estate of Ira M. Dominick entitled to offset alleged losses in farming the lands of J. Ryan Dominick and of Drayton M. Dominick against interest on their funds traced into his hands?

"5. What is the rental value of the Estate lands for 1942?"

The first three of the questions above stated should really be considered together, for the basic underlying issue for our determination is, Was there a constructive trust binding upon Ira M. Dominick for the benefit of his son, J. Ryan Dominick? And we think that for the reasons hereinafter set forth this question should be answered in the affirmative.

While Ryan receipted therefor it appears from the record that Ira M. Dominick, his father, actually retained the sum of $3,434.02, covering the amount due Ryan out of his mother's estate. This is in effect admitted by the answer, but it is alleged therein that the money was used entirely for the benefit of Ryan, "who was not *non compos mentis,* and who consented to his father, Ira M. Dominick, using the said money in such way as he saw fit."

And it appears from the agreed statement of facts as hereinbefore set forth that Ira M. Dominick sold and collected for certain timber and topsoil from lands in which Ryan was interested, and that he has never paid over or otherwise accounted to Ryan for the same. By reference to the schedule attached to the Master's first report the total amount of money received by Ira M. Dominick belonging to his son, J. Ryan Dominick, was the very substantial amount of $11,169.25, and the aggregate acreage of his land sold by his father, for which his father collected the purchase price, was 493.7 acres.

The record shows without controversy that Ira M. Dominick managed and cultivated the lands of his sons, Ryan and Drayton, just as if they were exclusively his own. He mingled the moneys received by him belonging to his sons with his own funds and kept no accounts and made no statements of his acts and doings. Referring particularly to his son Ryan, the evidence is substantially without dispute that he took entire charge of his son's property, real and personal, and dealt with it as his own, and that in his dealings with his son he treated him just as if he were a minor, although he had long been of age. His son lived with him and he furnished him board and lodging, but there is no evidence of any payments of money to him.

It seems to us that this statement alone is sufficient to show that the law should imply and enforce a trust relationship as between the father and the son (there clearly being a confidential or fiduciary relationship between the parties by reason of the kinship and the surrounding circumstances), to the end that justice may be done. The testimony shows that Ira M. Dominick was a man of good character, and we may readily assume that his motives were altogether proper; and it may well be that he intended and expected finally to make accounting for his acts and doings in the premises, believing that he was acting in the interest of his son. And his failure to account may have been due

in part to the unfavorable farming conditions just prior to his death. The fact remains, however, that no such accounting was made and that the legal obligations imposed upon him were not performed.

But the case for a constructive trust is much stronger when it is recognized that J. Ryan Dominick during the period in question, as he is now, was mentally incompetent to transact his business in an ordinarily prudent manner. Especially as to this issue Judge Thurmond was in disagreement with the Master, and there is indeed some conflict in the testimony. But in the light of all the evidence contained in the record relating to Ryan's mental condition, we think it is manifest that his condition was subnormal, and that the clear and definite weight of the evidence is such that a committee would have been appointed for him if the question of his competency had been raised at any time during the period in question. Some of our reasons for this conclusion will be hereinafter stated.

But first let us consider the law relating to a constructive trust. As was held in the case of *All v. Prillaman*, 200 S. C., 279, 20 S. E. (2d), 741, a constructive trust is to be distinguished from an express trust, because it arises entirely by operation of law without reference to any actual or supposed intention of creating a trust, and is resorted to by equity to vindicate right and justice or frustrate fraud. The doctrine of constructive trust is more frequently applied where the title to real estate is involved, but there is no sound reason to confine it to such cases. And it is true that generally speaking fraud is an essential element but it need not be actual fraud. For as was quoted with approval in the case of *Bank of Williston v. Alderman*, 106 S. C., 386, 91 S. E., 296, 298: "Actual fraud is not necessary, but such trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title. Constructive trusts have been said to arise through

the application of the doctrine of equitable estoppel, or under the broad doctrine that equity regards and treats as done what in good conscience ought to be done."

And the following statement from 65 C. J., 456, 457 is, we think, sound and correct: "Actual or intentional fraud is not necessary, nor is it necessary that any express or conventional trust relation shall exist between the parties, or that any promise shall have been made by the one for the benefit of the other, but, as a general principle, a constructive trust will arise whenever the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title, as against another, provided some confidential relation exists between the two, and provided the raising of a trust is necessary to prevent a failure of justice. *So, as has been said, the forms and varieties of constructive trusts are practically without limit, such trusts being raised, broadly speaking, whenever necessary to prevent injustice.*" (Emphasis added.)

The Master's reports were well prepared and his conclusions in this respect were in our opinion soundly based upon the evidence, except that, for reasons hereinafter stated, we are of opinion that he erroneously charged the estate with interest on the moneys received by Ira M. Dominick belonging to his son Ryan. Judge Thurmond unquestionably gave full and careful consideration to the Master's first report, which was before him, but we think he was in error in holding that the plaintiffs had not sustained the burden of proof with reference to the establishment of a constructive trust. It is true, as stated by the just and learned Judge, that in order to establish a constructive trust the evidence must be clear, definite, and unequivocal and satisfactory. But for the reasons already indicated we think the burden was fully sustained by the plaintiffs; and moreover, it seems to us that a palpable injustice would result if the estate of Ira M. Dominick were completely absolved from liability to account to his son Ryan.

In view of what has already been said it does not appear to be necessary to consider the evidently inadvertent statement in Judge Thurmond's decree that the plaintiffs had failed to trace funds from the property of the Dominick sons into the hands of their father, for this question is really set at rest by the agreed statement of facts and the pleadings.

But Judge Thurmond's views as to a constructive trust were very largely influenced by his conclusion that the Master was wrong in finding that Ryan was *non compos mentis* during the period in question. While we think it is by no means certain that a constructive trust should not be declared and enforced even if the mental incapacity of Ryan had not been so great as to consider him *non compos mentis,* we are yet of opinion that the Master was correct in his finding of fact that the evidence "established his mental incompetency to handle business matters from the time he attained his majority on down to the present."

Most of the testimony contained in the record relates to this matter. In addition to the testimony given by the witnesses sworn before the Master the testimony taken before the Judge of Probate relating to the adjudication was also by agreement introduced in evidence. There are many witnesses, lay and professional. The Master thought that the lay witnesses were about equally divided on the subject, but it will be observed that some of them who thought Ryan was incompetent gave the facts upon which their opinions were formed, and the facts tended strongly to support the opinions. And the testimony of two of the leading authorities on mental diseases in the State of South Carolina is so positive and convincing as to be conclusive. We refer to Dr. B. O. Whitten the Superintendent of the State Training School and Dr. C. Fred Williams, Superintendent of the State Hospital.

Dr. Whitten testified that he made an examination of J. Ryan Dominick on January 4, 1938, and his conclusion was

that his mental deficiency was approximately on the level of a seven or eight-year-old boy, and that he had reached the limit of his ability. He said: "In my opinion, he had never had a mental capacity exceeding a boy of eight years. It would just be my opinion, he could not have been rated much higher than that." It is apparent from the testimony of Dr. Whitten that Ryan's mental deficiency was such that it had existed throughout most of his previous life. As Dr. Whitten said in his testimony before the Judge of Probate, a defective mind is commonly described "as one incapable of competing on equal terms with his normal fellows, the deficiency having existed from birth or an early age in life and thus rendering the individual incapable of managing himself and his affairs with ordinary prudence."

The testimony of Dr. Williams is equally clear and convincing. He stated that based upon his own examination, and the testimony of certain witnesses which had been furnished him, his conclusion was that John Ryan Dominick "had been mentally deficient from an early age, at least as early as 9 years of age, probably earlier. By mental deficiency I mean feeble minded." These expert witnesses are not only men of the highest character and ability but they were wholly disinterested. The Master was right, we think, in his view that their testimony "tipped the scales heavily" in favor of the conclusion of mental incompetency.

Judge Thurmond, however, was impressed with the view that mental incompetency should not be declared because of the fact that certain judicial proceedings had been taken in the Courts of Greenwood County to which Ryan was a party and these proceedings were handled by highly reliable and capable attorneys, and he said it would be improper for the Court "to override" these proceedings. But it will be remembered that these proceedings, while no doubt carefully and properly handled, were really uncontested matters involving no action on the part of J. Ryan Dominick, save his signature to certain papers. And

the same thing applies to the signature of deeds by him. It is apparent that all of these matters were actually handled by the father, and there was hardly any occasion even for the attorneys to interview the son at length about them. There is nothing to impugn the fairness of these transactions, and the Court is not called upon to override any of these judgments or decrees. Ryan had never been adjudicated incompetent. He was not insane in the sense that he should be confined in an institution, and those dealing with him directly or indirectly, had the right to rely upon the presumption of mental competency, in the absence of actual notice to the contrary, for the law is well settled that a contract entered into with an incompetent person in good faith without fraud or imposition, upon a fair consideration, will be supported as valid. And certainly an executed transaction of that kind would not be set aside unless the parties could be restored to their original position. 28 Am. Jur., 716; *Sims v. McLure,* 8 Rich. Eq., 286, 70 Am. Dec., 196. The holding of the cited case, as stated in the syllabus, is as follows: "Contracts of one of unsound mind, made before the appointment of a committee, held valid where no undue advantage was taken of him."

Some reference is also made to the fact that Ryan was surety on the bond of his father as guardian for Drayton; but doubtless he signed the bond at the request of his father, and the Judge of Probate accepted him because of his financial worth, and had no occasion to inquire into his mental competency.

The testimony seems to be undisputed that Ryan took no interest in the management of his property and allowed his father to handle it without any interference whatever from him. It is true that he seems to have had some mechanical skill and spent considerable time working in the blacksmith shop on the plantation making and repairing tools and the like; but the testimony as to whether he was mentally incapable of handling the simple business

connected with this mechanical work is conflicting; and our conclusion is that mere mechanical skill of this kind does not establish his mental competency.

It therefore definitely appears that in this respect the decree of Judge Thurmond should be reversed, and that the defendant as administratrix of the estate of Ira M. Dominick, deceased, should be required to account to J. Ryan Dominick for the total principal sum received by the decedent, to wit, $11,169.25, less any proper credit or credits. And the remaining question is what credits, if any, should be allowed, and whether or not interest should be charged or offset by farming losses.

The Master found, as applicable both to Drayton and Ryan, that the rents and farming income received from their lands by their father were offset by the payment of taxes and expenditures for upkeep, and this seems to have been conceded; and we think it is just and equitable.

We are also of opinion that the Master was correct in allowing credit on the account of J. Ryan Dominick for board and lodging, the principal amount thereof being $1,570.00. Deducting this amount the principal balance left is $9,599.25.

The Master thought that interest should be added to both the debits and credits, and upon this basis he found the balance in favor of J. Ryan Dominick to be $15,883.88, but we think the true balance is that above stated.

Since Judge Thurmond held there was nothing due to Ryan, he had no occasion to consider the matter of interest, so far as he was concerned, but he did consider it with reference to Drayton, and he expressed the opinion that the interest on the original amount belonging to Drayton and received by his father was probably offset by the losses sustained by the father in the operation of Drayton's farm. He recommitted the cause to the Master so that further testimony might be taken as to this matter

and some other minor matters. The Master in his second report merely submitted the testimony with reference to this phase of the case, and Judge Henderson held, definitely and specifically, that while the trustee had mingled the trust funds with his own and was therefore legally chargeable with interest, it was his opinion that "the farming losses exceed in amount the interest charge," and that therefore the trustee's estate should not be charged with interest on this item. We are in full accord with Judge Henderson in this finding.

By the same token we are likewise of opinion that the estate of Ira M. Dominick should not be charged with interest on the amount due to J. Ryan Dominick, in that, the evidence indicates that farming losses equalled or exceeded in amount the interest sought to be charged.

While in the decrees of Judge Henderson (particularly his supplemental one) distinction is made between interest on the original amount of $3,434.02 received for Drayton and other amounts of his later received, and there was no exception on this point, we are, however, of opinion that as to the account of J. Ryan Dominick no interest should be charged on any of the items, that is to say, prior to the effective date of the judgment hereby rendered.

We have not overlooked the contention of the appellants that the estate should not be allowed credit for Ryan's board and lodging, but we think this credit was entirely proper (exclusive of course of interest). The amounts fixed by the Master in this respect were manifestly reasonable and take into consideration the value of the services of Ryan in the plantation shop.

The only question remaining open for decision by us is the question as to the rental value of the estate lands for 1942. Upon due consideration of the testimony we are of opinion that Judge Henderson correctly held that the reasonable rental value for 1942 is ten bales of cotton.

It follows therefore that, in our opinion, the decree of Judge Henderson as explained by his supplemental decree should be affirmed, and the decree of Judge Thurmond should be modified by the reversal thereof in so far as it purports to absolve the defendant as administratrix of the estate of Ira M. Dominick from liability to J. Ryan Dominick; and the plaintiff, J. Ryan Dominick, by his guardian *ad litem,* T. A. Dominick, is entitled to judgment against the defendant, Kathleen Dominick Rhodes, as administratrix of the estate of Ira M. Dominick, deceased, for the sum of Nine Thousand, Five Hundred and Ninety-nine and 25/100 ($9,599.25) Dollars; and the cause should be remanded to the Court below for such other and further proceedings as may be necessary or proper, not inconsistent with this opinion. And it is so ordered.

Modified and remanded.

MR. CHIEF JUSTICE BONHAM and MESSRS. ASSOCIATE JUSTICES FISHBURNE and STUKES concur.