216 S.C. 280 (1950)
57 S.E.2d 470
SCOTT
v.
SCOTT ET AL.
16315
Supreme Court of South Carolina.
February 3, 1950.
*281 Messrs. McDonald & McGowan, of Florence, for Appellant.
*282 Messrs. Norton, Norton & Norton, of Marion, for Respondents.
Decree of Judge Greneker follows:
This matter comes before me on exceptions to the report of A.B. Jordan, Master of Dillon County, to whom it was referred by a general order of reference for the purpose of taking and reporting the testimony, together with his findings of fact and conclusions of law, and was argued before me at the spring term (1949) at Dillon, and taken under advisement.
Briefly stated, the facts are that D.M.B. Scott, a farmer of Dillon County, died apparently intestate on January 28, 1916, leaving as his heirs at law his widow, the plaintiff in this action, and three young children (a daughter and two sons), the oldest being ten years of age, and another son, June, born posthumously. The three sons, Rankin, Bradford and June, are the defendants in this action. The plaintiff was at the time of the hearing sixty-four years of age, so she would have been approximately fifty-three years of age at the time of the execution of the deed hereinafter mentioned. At the time of his death, Mr. Scott owned a six-horse farm consisting of three hundred eighteen acres.
On the 28th day of December, 1937, Mrs. Scott, the plaintiff, executed a deed to her three sons, B.R. (Rankin) Scott, B.J. (June) Scott, and T.B. (Bradford) Scott, by which she conveyed all her right, title and interest in the estate lands of her husband, consisting of three hundred eighteen acres, reserving to herself a life estate. The deed was executed in the office of Gibson & Muller of Dillon, attorneys of the highest reputation for carefulness and integrity, *283 and was witnessed by Mr. Muller and Miss Vera P. Medlin. The deed was duly recorded.
On the ____ day of January, 1948, or approximately eleven years after its execution, Mrs. Scott filed a suit for the purpose of having her sons, the holders of the legal title, declared trustees by reason of the circumstances under which it is alleged the deed was executed.
In substance the complaint alleges that plaintiff, as an heir at law of her husband, D.M.B. Scott, was the owner in fee simple of an undivided one-third interest in a tract of land containing three hundred eighteen acres, and that soon after her husband's death the real estate was divided between the plaintiff and her children, and the plaintiff came into possession thereof; that some time prior to December 28, 1937, (the date of the deed above referred to) she was informed, by persons in whom she had great confidence, that her daughter, Berry, (not a party to the suit), and now a Mrs. Stackhouse, had squandered or misappropriated certain monies belonging to I.T. Wood, by whom she was employed, and that Wood intended to hold her, the plaintiff, responsible for the money allegedly misappropriated and that her interest in the real estate would be taken for it.
The complaint further alleges that plaintiff "does not know whether these representations were instigated by the defendants", but that the defendants assured her that if she would convey her interest to them, they would reconvey it to her as soon as the trouble concerning the daughter had "blown over", or at any time she requested it; that the conveyance was due to the persuasion of the defendants, and to plaintiff's misunderstanding as to what might happen to her property; that the defendants are all children of plaintiff, and that she had great confidence in them and relied on their advice; that the deed was made as a result thereof; that she had demanded that the said defendants reconvey the property but that they have failed and refused to do so. She also alleges absence of consideration.
*284 The prayer of the complaint is that the defendants be declared trustees of the title to the property for the benefit of the plaintiff and that they be required to reconvey it to her, and for general relief.
There was no testimony as to the service of the complaint, but the Court assumed that all of the parties are properly before the Court. The defendant, Rankin Scott, who admittedly lives in Georgia, did not file an answer, nor did the defendant, June Scott. However, the defendant, Bradford Scott, answering in behalf of himself and all others of the defendants, "who come in and contribute to the cost of this action", did file an answer.
By the first defense, all material allegations of the complaint were denied, except that they refused to reconvey the property.
The second defense alleges that the deed in question was executed by plaintiff who was then of excellent business judgment, of sound mind, without persuasion, undue influence, or fraud perpetrated by the answering defendant, or any other defendant, or by any one in their behalf, and that the deed in question was under seal, for a good and valuable consideration, and that it was executed with the advice and approval of her own attorneys, and pursuant to her own plan for the final disposition of her property.
The third defense alleges that although the answering defendant and the other defendants had been in close personal contact with the plaintiff, and that some one of the defendants had continuously rented the lands in question from the plaintiff for a period of more than ten years, that plaintiff has during that time expressed no desire to have the property reconveyed, but on the contrary permitted answering defendant, and the other defendants, to clear and drain the land, erect buildings, make a pasture, and make other improvements in anticipation of their future enjoyment, and that they will be greatly damaged if the plaintiff should be *285 permitted to rescind her act; that she is guilty of laches and estopped to deny the deed's validity.
The fourth defense alleges that if the answering defendant or any other of them promised or agreed to reconvey the lands described in the complaint, which promise was specifically denied, such promise, not being in writing, would be contrary to the Statute of Frauds, Code 1942, § 7042 et seq., and that the defendants plead the Statute in bar of recovery.
The fifth defense sets up improvements made by the defendant, Bradford Scott.
In view of the facts, there is no necessity that the various defenses be discussed separately.
The circumstances under which the courts will cancel a deed for fraud and undue influence and those under which they will declare a constructive trust are discussed in the case of Page et al. v. Lewis et al., 209 S.C. 212, 39 S.E. (2d) 787, where the deeds and assignments of an eighty year old man were set aside for fraud and undue influence; and the case of Dominick et al. v. Rhodes et al., 202 S.C. 139, 24 S.E. (2d) 168, where a constructive trust was declared in favor of two incompetent sons against the estate of their father. While there were many surrounding circumstances warranting the action of the court in both of these cases, the predominating reason for the respective decisions was the proven incompetence of the persons and the confidential or fiduciary relationship existing between the respective parties.
The matter now comes before me upon exceptions to the Master's report in which the Master held contrary to the contention of the plaintiff. The report is full and goes in great detail into the facts.
In addition to very full oral arguments, Counsel for the respective parties have filed briefs which were necessarily quite elaborate and discussed the case in great detail, and while I do not take up each exception separately, I have endeavored *286 to give them all my careful attention, consideration and study.
It is abhorrent to me that conditions should ever arise to make litigation between mother and child, and I think it is but natural for a Court to have a yearning to decide in favor of a mother, who certainly is, in the eyes of this Court, a favored suitor, but there are certain fundamentals which must control in every case and even in those cases between mother and child.
The plaintiff's Counsel, in the written brief, state that their cause of action is certainly not based upon the feeble mindedness of the plaintiff but is founded upon the facts brought out in the testimony and uncontradicted, and that the plaintiff was terribly upset mentally because of the shocking news that her daughter had disposed of a considerable sum of money, and that the plaintiff was induced by the defendants, in whom she had the greatest confidence, to convey to them all of the property (real) that she owned, and that her acts were done hastily and upon insistence by the defendants and without plaintiff being able to have the benefit of independent advice from persons not interested in the transaction.
Is there a preponderance of the testimony on the part of the plaintiff to establish her contention, or are her contentions established in a clear, satisfactory, convincing, full, free, definite, unequivocal, precise, decisive, indubitable, overwhelming, unmistakable manner, or in such a manner as capable of but one conclusion, or by a greater weight than a mere preponderance?
To answer that question, it is necessary to look into the testimony of the plaintiff herself, and while not quoting all of her testimony, I find that when she was first placed upon the stand and asked by her own counsel why she made the deed, she stated, after relating her conversation with Mr. Stackhouse, "Rankin was not at home all day and did not *287 come in until late that night. Next morning Rankin wouldn't talk to me about it."
"Q. What remark did he make to you when you told him about it? A. I told him about Ben's conversation, and he just said `yes' and walked off.
"Q. Where was Bradford? A. I believe he was away.
"Q. Was June at home? A. No, he was off at school."
Then upon cross-examination she was asked:
"Q. You made the deed on the strength of what you had heard from Mr. Stackhouse and what June told you? A. Only on what Mr. Stackhouse said.
"Q. Only Ben and June discussed it with you? A. June Just asked if I would let Wood break me up, and then he told me that I would get it back if I signed the deed.
"Q. Do you know whether you ever talked with Bradford between the time Mr. Stackhouse talked to you and the time you made the deed? A. No.
"Q. Did you talk with Bradford between the time when Stackhouse talked with you and the time you signed the deed? A. I don't remember.
"Q. You said Rankin did not discuss it with you? A. No, and Bradford wouldn't.
"Q. You did not talk with Bradford before you made the deed, and you mentioned the Wood matter to Rankin and he wouldn't discuss it? A. Yes.
"Q. Did Rankin ask you to sign the deed, or did Bradford? A. No.
"Q. How long a period elapsed between the time Stackhouse talked to you and the time you made the deed? A. About two weeks.
"Q. Did Stackhouse suggest that you convey the land? A. No.
"Q. In accordance with the reservation of a life estate for you, did you immediately start charging the boys rent for their land? A. If the land was mine, I did.
*288 "Q. What made you decide to ask for a reconveyance after all these years? A. The boys aren't giving me anything, and I might get sick and need money.
"Q. You are as good at business as the boys, aren't you? They don't tell you what to do, do they? A. No.
"Q. They never have told you what to do, have they? A. No.
"Q. When June told you that you would get your land deeded back, do you recall whether it was before or after you signed the deed? A. I don't know.
"Q. Why did you wait until after the death of Mr. Gibson and Mr. Muller to bring this action? A. Well, I'll tell you, I'm old now and can't work like I used to do, and I have to look out for myself.
"Q. Did you know that you had a life estate? A. Yes."
In quoting the above testimony, I do not intend to convey the impression that this was the only testimony offered by Mrs. Scott, and in fact, when she was recalled to the stand by her counsel, she answered some of the questions in a rather different light than above set out, but the purpose of quoting this testimony is for consideration in determining whether her testimony measures up to that standard of testimony which is absolutely necessary if a constructive trust is to be found in this case.
It must be remembered that a constructive trust arises entirely by operation of law without reference to any actual or supposed intention of creating a trust and is resorted to by equity to vindicate right and justice, or to frustrate fraud. If this, then, be how a constructive trust is created, certainly a Court must examine the testimony and ascertain if the facts brought out evidence such strength as the law will declare sufficient for the establishment of such a trust.
The plaintiff testified that the first information upon which she acted was that furnished her by Bennie Stackhouse, an insurance agent, and a mere acquaintance, but there is no *289 testimony from which it could be inferred that he occupied any confidential or fiduciary relationship. There is no evidence that Stackhouse had ever talked with any of the defendants, and, in fact, Mrs. Scott admits that none of the defendants were at home when Stackhouse related the rumor on which she says she acted. It is very striking that the plaintiff also testified that the next morning, evidently in response to some inquiry as to whether or not Bradford had heard the report, she says, "He would not talk to me, he just said, `yes', and walked off." June at that time was at Furman, and he came home a few days later for the Christmas holidays. It is admitted by all parties that the firm of Gibson & Muller was one of outstanding integrity, and this also is known to the Court and indeed cannot be overlooked by the Court, for here Mrs. Scott signed a solemn instrument in which she reserved a life interest. It is difficult for me to conclude that Mr. Muller would have allowed Mrs. Scott, a person who had been coming to that office for many years  although possibly to see some other member of the firm  to have executed a deed when she was mentally upset or which was against her will and desire.
Mrs. Scott's testimony, as well as the testimony of other witnesses as to her ability, is susceptible of no other conclusion but that she is and was a woman of unusual ability and dominant will. In fact, the success with which she managed her farm and educated her children, and the way she traded with her neighbors, and the fact that she was a good business woman, a careful and close buyer, paid close attention to business, looked closely after her tenants' accounts, are all indicative and conclusive that she exercised her own judgment. And I think it would have been difficult for her children to have substituted their will for hers.
As was held in the recent case of All v. Prillaman, 200 S.C. 279, 20 S.E. (2d) 741, 159 A.L.R. 981, the fraud necessary to create a constructive trust must be clear and convincing and more than a mere preponderance of the testimony.
*290 Do the facts in this case indicate that there was such a confidential relationship or such domination of will exercised by any of the defendants, or anyone acting for them, as to create any presumption of fraud as is laid down in the All case, supra, where the rule as adopted in this state is as follows: "Where a child executes a deed to the parent, a client to his attorney, or a ward to his guardian, if the good faith of the transaction is challenged the law casts upon the parent, attorney, or guardian the burden of establishing the good faith of the transaction. No such requirement exists, however, where a parent executes a deed to a child, unless the evidence establishes that the parent, by reason of old age or other infirmity, has become subject to the dominion of the child. In the case of a deed from a child to a parent the presumption of undue influence arises as a matter of law; but in case of a deed from a parent to a child no such presumption arises, it must arise as a presumption of fact, based upon the proof that the natural dominion of the parent over the child has ceased to exist, and that by reason of the weakness of the parent and the strength of the child the will of the parent has been overcome by the will of the child, and that the act of the parent was not his own act, but the act of the child."
If then no such presumption exists in the case of a deed by a parent to child, the next inquiry would be was the natural dominion of the parent caused to no longer exist or has the will of the parent been overcome by the will of the child. A close examination of the testimony in the case indelibly impresses me with the fact that Mrs. Scott, the plaintiff, had a will of her own. Is it reasonable to think that the will of such a woman as Mrs. Scott, a person of proven business ability, a person of unusually good judgment, a person who knew what it was to earn and save a dollar, could be overcome and completely dominated by her son June, who was then a mere college student and who had been receiving funds for his education from and through his mother? It is diffcult for me to so conclude. It is true that *291 June Scott testified he told his mother that she could get the property back, or words to that effect, though it is not definite as to when he told her; but it is strange to the Court that, even with this statement, this same defendant has so far not seen fit to make his deed to his mother, which would, it seems reveal his testimony in a more favorable light. Another interesting fact revealed by the testimony of June Scott is that he at no time considered that he was practicing a fraud upon his mother; in fact, he says he thought to convey the land to the three sons was a good idea.
As was said by the Court in the All case, supra, "a mere preponderance of the evidence is not sufficient to prove a constructive trust, but that it must be established by evidence which is clear, definite, unequivocal, and satisfactory, or such, as has been said, as to lead to but one conclusion, or as to leave no reasonable doubt as to the existence of the trust." In the case under consideration I do not find that there is even a preponderance of evidence on the side of the plaintiff, and I do not think that the testimony which is relied upon by the plaintiff in any way measured up to the standard required for establishing a constructive trust.
Also, I think the plaintiff and her Counsel, who has argued this case in a most able manner, overlooked that principle of law which requires that to establish a constructive trust there must have been an original misrepresentation by means of which legal title was obtained, an original intention to circumvene or some plan to get the better bargain, and, in the absence of some clear evidence of fraud, imposition or mistake at the time of execution of a conveyance, a grantee's subsequent refutation of alleged parol promise is not a fraud against which equity can relieve.
The only evidence which I am able to discover as to a promise to reconvey is the testimony of June Scott, and even if this be taken to be true, how could it be binding on the other defendants?
*292 Another very important fact in the case is that the plaintiff recognized for so many years her ownership of the reserved life interest and, indeed, she was such a good business woman that she required written contracts from her sons when renting them the very property which is now the subject of this action. In passing, I may say that in the many years of practice I can think of very few, if any, instances where a mother exercised such good judgment. Generally, leases by a mother to son were orally made. This is just another indication that Mrs. Scott was a woman of unusual business ability.
Even in the partition proceeding and accounting which was instituted by the daughter of the plaintiff and in which the plaintiff and her three sons were defendants, there is nothing in the record of that suit to indicate that Mrs. Scott was not satisfied with the deed which she had made and which was in existence at the time and before the partition suit was brought, and it must be remembered that the very purpose of the partition suit is to settle and make final a division of the property in question. It is indeed diffcult for me to see how Mrs. Scott could have gone through that proceeding being represented by independent and able counsel and not have said something to him about being dissatisfied with the then existing deed. Certainly her counsel at that time know it, certainly the Master knew it, and all the parties to the present action were parties to that action. Was Mrs. Scott satisfied with the deed during the evidently rather bitterly contested partition suit? She must have been. If not, that was her time to speak.
In this case, we do not have an impairment of mental capacity, as was found in Page et al. v. Lewis et al., 209 S.C. 212, 39 S.E. (2d) 787, where certain instruments were set aside, and neither do we have a confidential relationship combined with mental impairment, as was found in the case of Dominick et al. v. Rhodes et al., 202 S.C. 139, 24 S.E. (2d) 168, where the administrator of a father's estate was *293 required to accountant to his surviving children whose property had been commingled with his.
This Court is cognizant of the fact that in doubtful cases, where the circumstances under which property was acquired make it inequitable that it should be retained by him who holds the legal title, equity will declare a constructive trust, provided there is a confidential relationship, and provided further that the raising of a trust is necessary to prevent a failure of justice. However, I cannot find that the facts and all the surrounding circumstances in this case are established in conformity with the well recognized principles as laid down by our Supreme Court which would warrant the Court in finding that a constructive trust was created or established.
I do not find, in any part of the case, where the action of Mrs. Scott in making the deed was instigated by any of her three children. And unless the evidence establishes that a parent, by reason of old age or other infirmity, has become subject to the dominion of the child, a child does not have the burden of establishing the good faith of a transaction whereby a parent executes a deed to a child, since no presumption of undue influence arises. All v. Prillaman, supra.
Our Supreme Court has also laid down the rule that if the evidence is capable of reasonable explanation upon a theory other than the existence of the trust, it is not sufficient to support a decree enforcing a constructive trust. In this case I conclude that there is abundant evidence for the Court to refuse a decree enforcing a trust.
Of course the plea of the Statute of Frauds will not be permitted to shield. a fraud, but at the same time one of the most valuable safeguards thrown around a deed is that parol evidence is not admissible to vary or contradict the terms of a written contract, and this applies in all its strictness to actions involving deeds. Parol reservations or exceptions made either at or before the making of a deed are merged therein and cannot be allowed to alter or modify its legal effect. As was said by Judge Stukes in the All case *294 supra, "Of course every court, especially as is often said, a court of equity, is zealous to find and apply the truth of all controversies so that universal justice will result, but another desideratum is the security and repose of real estate titles. whence one of the reasons of the parol evidence rule and for the Statute of Frauds."
Mrs. Scott executed a deed in a reputable lawyer's office, she recognized it for many years, she was a woman in the prime of life at the time of execution, there was no question of mental incapacity or mental or physical impairment, she reserved to herself a life estate, she went through other litigation after the execution of the deed and did not at that time raise any question, and in view of all these circumstances I cannot conclude that she should prevail.
It is therefore Ordered, Adjudged and Decreed that the plaintiff's exceptions to the Master's report be and the same are hereby overruled, and while there may be some details in the Master's report with which I do not agree, yet that would not affect the result of my decision, and it is Ordered, Adjudged, and Decreed that the report of the Master Be and the same is hereby confirmed.
February 3, 1950.
PER CURIAM.
In this action in equity for declaration of a constructive trust in land appellant seeks reversal of concurrent factual findings of master and trial judge which brings the case, within the rule recently applied in Wolfe v. Wolfe, S.C. 56 S.E. (2d) 343. That late case is also an apt authority upon the other legal principles which are pertinent here. Careful consideration of the painstaking report and decree, in the light of the testimony and exceptions, is convincing that they are supported by the evidence and are certainly not contrary to the clear preponderance of it. They further correctly apply the law to the facts.
*295 The decree of trial Judge Greneker is affirmed and will be reported as the judgment of this court. The exceptions are overruled.