**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 04-1351**

---

JEWEL BROWN,

Plaintiff - Appellee,

versus

RYAN'S FAMILY STEAK HOUSES, INCORPORATED;
RYAN'S FAMILY STEAK HOUSE MANAGEMENT,
INCORPORATED; RYAN'S FAMILY STEAK HOUSES EAST,
INCORPORATED; ROD WESSINGER,

Defendants - Appellants,

and

DAVID BARBER,

Defendant.

---

Appeal from the United States District Court for the District of
South Carolina, at Charleston.  Patrick Michael Duffy, District
Judge.  (CA-03-2582-23BG)

---

Argued:  October 1, 2004            Decided:  October 29, 2004

---

Before LUTTIG and MICHAEL, Circuit Judges, and Jackson L. KISER,
Senior United States District Judge for the Western District of
Virginia, sitting by designation.

---

Affirmed by unpublished opinion.  Judge Kiser wrote the opinion, in
which Judge Luttig and Judge Michael joined.

---

**ARGUED:** Edward Grantland Burns, Michael Stuart Pitts, NEXSEN PRUETT, Greenville, South Carolina, for Appellants. Tanya Briana Spavins, STEWART, ESTES & DONNELL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Mary L. Hughes, NEXSEN PRUETT, Charleston, South Carolina, for Appellants. M. Reid Estes, Jr., STEWART, ESTES & DONNELL, Nashville, Tennessee; Jack D. Cordray, Charleston, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

KISER, Senior District Judge:

This appeal arises from a suit under Title VII by appellee Jewel Brown against appellants Ryan's Family Steak Houses ("Ryan's"), her former employer. Ryan's filed a motion to dismiss and a motion to compel arbitration based on an arbitration agreement ("Agreement") signed by Jewel Brown ("Brown") and Pearl Gassaway ("Gassaway"), her legal guardian. Applying South Carolina contract law and federal arbitration law, the district court determined that the Agreement was void on several grounds, including 1) Brown was a minor at the time of signing the Agreement and Pearl Gassaway, her guardian, did not have the requisite mental capacity to enter into a binding contract; 2) the Agreement was not notarized as stipulated in the terms of the Agreement; 3) Ryan's violated the Agreement by failing to provide Brown and Gassaway with a copy of the rules of the arbitration system established in the Agreement; and 4) Brown could not effectively vindicate her Title VII rights in the arbitral forum established in the Agreement. The district court therefore denied the motion to dismiss and the motion to compel arbitration. For the reasons set forth below, we affirm the district court's decision.

We will limit our recitation of facts to those which bear on Gassaway's lack of mental capacity to execute the Agreement. On May 25, 2001, one week after her sixteenth birthday, Brown applied for a position as a server at Ryan's in North Charleston, South Carolina. As part of the application process and before she commenced any work with Ryan's, Brown was given various forms including a mandatory arbitration agreement with EDSI, an arbitration company contracted by Ryan's. Brown took these forms to her car to fill them out. Because Brown was a minor at the time of the signing, Pearl Gassaway, her great-great aunt[1] and legal guardian, also signed the agreement.

Gassaway died in 2002. Gassaway's sister, Jewel Craig ("Craig"), testified that Gassaway had two strokes and could not perform daily tasks such as cooking, driving, or answering the phone for years leading up to her death. In at least one incident, Gassaway left the house in the middle of the night, went to a neighboring house, and could not find her way home. Furthermore, Dr. John Sanders, Gassaway's treating physician for sixteen years, stated that Gassaway had been physically and mentally declining for three to four years before her death in 2002. Among her various

---

[1]The district court's opinion refers to Gassaway as a great aunt. Considering that both the magistrate's report and plaintiff's briefs refer to her as a great-great aunt, we will assume that the district court simply made an oversight.

- 4 -

ailments, Gassaway was afflicted by atrophy of the brain and a subclavian steal syndrome, a disease resulting in decreased blood flow to the brain and causing her to lose consciousness. In 2001, there was an investigation into whether she should retain guardianship of Brown. In March 2001, Dr. Sanders wrote a letter supporting the retention of custody by Gassaway with "proper counseling and assistance."

On August 7, 2003, Brown, sued Ryan's under Title VII for sexual harassment, discrimination, wrongful termination, and retaliation in connection with her employment. On August 27, 2003, Ryan's filed a motion to dismiss and petitioned to compel arbitration under an agreement signed by Ms. Brown at the time of her job application. The Magistrate Judge issued a report recommending that Ryan's motion to dismiss be denied based on the invalidity of the arbitration agreement. Ryan's objected to the Magistrate's report. On February 27, 2004, the District Court adopted portions of the Magistrate's report and denied Ryan's motion to dismiss and petition to compel arbitration. Ryan's filed a Notice of Appeal on March 8, 2004.

II.

We review *de novo* a decision of the lower court on a motion to dismiss pursuant to Rule 12(B)(6). *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178 (4th Cir. 1996). Dismissal under Rule

12(B)(6) is appropriate when, accepting as true the well-pleaded facts in the complaint and viewing them in the light most favorable to the plaintiff, the court finds with certainty that a plaintiff would not be entitled to relief under any state of facts which could be proved in support of the plaintiff's claim. *See id.* We also review *de novo* a district court's denial of a motion to compel arbitration*. Sydnor v. Conseco Financial Servicing Corp.*, 252 F.3d 302 (4th Cir. 2001).

A district court's underlying findings of fact, however, are reviewed for clear error. *Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 511 (4th Cir. 2002). This Court has indicated that a determination of mental capacity is a factual determination. *Shrader v. Heckler*, 754 F.2d 142 (4th Cir. 1985). Furthermore, South Carolina common law treats determinations of mental capacity as findings of fact appropriate for juries. *See Vereen v. Hardee*, 328 S.E.2d 666 (S.C.App.,1985); *Byrd v. Byrd*, 308 S.E.2d 788 (S.C. 1983) (affirming jury determination concerning mental capacity); *Vereen v. Bell*, 182 S.E.2d 296 (S.C. 1971) (stating that determination of mental capacity to execute a deed was a finding of fact); *Dominick v. Rhodes*, 24 S.E.2d 168 (S.C. 1943) (indicating that a Master's determination of a businessman's mental incompetency was a finding of fact); *Gladden v. Southern Ry. Co.*, 141 S.E. 90 (S.C. 1928) (holding that the validity of a release signed by an injured plaintiff based on concerns over her mental

capacity and duress was an appropriate question for the jury). We therefore review the district court's determination of mental capacity under the clear error standard.

Finally, we review a district court's evidentiary rulings for abuse of discretion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).

III.

We disagree with Ryan's assertion that the district court erred in finding that Gassaway did not have the mental capacity to enter into a binding contract. Under South Carolina law, a person must have the mental capacity to understand or comprehend the subject of the contract, its nature, and its probable consequences. *Macauly v. Wachovia Bank of South Carolina, N.A.*, 569 S.E.2d 371, 376 (S.C. Ct. App. 2002). The party alleging lack of capacity bears the burden of proving incapacity at the time of the transaction by a preponderance of the evidence. *Grapner v. Atl. Land Title Co.*, 416 S.E.2d 617, 618 (S.C. 1992). Under the Federal Rules of Evidence and Supreme Court precedent, expert testimony must meet certain requirements to be admissible. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); Fed. R. Evid. 702. The Fourth Circuit has held, however, that *Daubert* does not apply to fact witnesses, such as a medical examiner who

examines the victim of an accident. *Binakonsky_v. Ford Motor Co.*, 133 F.3d 281 (4th Cir 1998). Furthermore, if a witness is not testifying as an expert, he may testify to opinions or inferences which are rationally based on his perception of the facts if it is helpful to a clear understanding of a fact in issue and not based on scientific, technical, or specialized knowledge. Fed. R. Evid. 701.

In the present case, Ryan's argues that the district court erred in admitting two pieces of evidence offered by Brown. Ryan's first objects to a letter from Dr. Sanders, Gassaway's treating physician for sixteen years, which stated that Gassaway had been physically and mentally declining for three to four years before her death in 2002. In the letter, Dr. Sanders detailed Gassaway's various ailments including atrophy of the brain and a subclavian steal syndrome,[2] a disease resulting in decreased blood flow to the brain and causing her to lose consciousness. Ryan's argues that Dr. Sanders's testimony fails to meet the standards established by *Daubert*.

In reviewing the district court's decision to admit Dr. Sanders's letter, we find that the district court did not abuse its

---

[2]Although neither the district court nor the magistrate specifically mention subclavian steal syndrome, both mentioned that Dr. Sanders's letter chronicled the various ailments afflicting Gassaway and cited the letter as a basis for their rulings. The letter listed various serious ailments including subclavian steal syndrome.

discretion. First, Dr. Sanders's diagnosis of Gassaway's ailments does not have to meet *Daubert* standards because Dr. Sanders is a fact witness observing the condition of a patient, like the medical examiner in *Binakonsky*. Second, Dr. Sanders's opinion that Gassaway could not have reasonably understood the terms of the Agreement is admissible under Rule 701 of the Federal Rules of Evidence. Fed. R. Evid. 701. His opinion on Gassaway's mental well-being was based on his perception of Gassaway and her ailments, not on "scientific, technical, or specialized knowledge." Furthermore, Dr. Sanders is the most qualified person available to testify to Mrs. Gassaway's mental capacity. Gassaway has passed away and is not available for further medical examination. Dr. Sanders was her treating physician for sixteen years. The fact that his practice is internal medicine rather than neurology does not negate the fact that he is a qualified physician with more first-hand knowledge concerning Gassaway's physical and mental well-being than any other medical professional. The district court, therefore, did not abuse its discretion in admitting his letter.

Ryan's also argues that the district court erred in accepting the affidavit of Craig, Gassaway's sister. The affidavit describes the behavior of Gassaway in the final years of her life and her ability to perform daily tasks. Ryan's argues that the affidavit

is irrelevant because it only describes limitations on Gassaway's physical capacity rather than her mental capacity.

These arguments also fail.  Deficiencies in mental well-being often manifest themselves in physical actions.  Craig lived with Gassaway for fifteen years.  She described situations in which Gassaway became lost and confused, and she described Gassaway's inability to perform simple daily tasks.  Certainly, the district court could have considered these situations and capabilities as physical manifestations of her diminished mental capacity such that it was not clear error for the district court to consider Craig's testimony.

Although Ryan's does not offer any evidence of their own to rebut Brown's evidence, Ryan's does try to assert that the district court erred because Brown's evidence actually shows that Gassaway *did* have the mental capacity to enter into a binding contract. Ryan's argues that a letter written by Dr. Sanders to support Gassaway's efforts to retain guardianship of Brown in March  2001 indicates that Gassaway did have the mental capacity to enter into a binding contract because Dr. Sanders opines that Gassaway had been a "responsible parent" and should retain guardianship over Brown.

Again, Ryan's arguments lack merit. This letter specified that Gassaway could be a responsible parent *with proper assistance and counseling*.  A statement that a person needs somebody else to

assist and counsel them to be responsible does not indicate that the person has the mental capacity to enter into a binding contract. Because Dr. Sanders indicated that Gassaway needed assistance and counseling to be a responsible parent, his letter does not show that she had the requisite mental capacity.

Finally, Ryan's argues that the district court failed to properly consider the affidavit of Brown, the only witness to Gassaway's signing of the Agreement. The affidavit does not mention anything that would indicate a diminished mental capacity at the time of the signing. Because the only material witness to the signing did not indicate that Gassaway lacked mental capacity at the time, Ryan's argues that the district court erred in finding that Gassaway lacked the requisite mental capacity to enter into a binding contract.

We find that the lack of description in Brown's affidavit of any mental deficiencies afflicting Gassaway, however, is hardly determinative or even persuasive in analyzing Gassaway's mental capacity. Brown has offered the testimony of Dr. Sanders and Craig to prove Gassaway's diminished mental capacity. The simple lack of a definitive statement in Brown's affidavit cannot outweigh the affirmative assertions of Gassaway's treating physician and live-in sister. Therefore, the district court did not clearly err in its consideration of Brown's affidavit.

In conclusion, we note that Ryan's has not offered a shred of evidence to rebut the evidence offered by Brown. Although the affidavit of Craig and the letter by Dr. Sanders are by no means perfect indicators of Gassaway's mental capacity, we cannot find that the district clearly erred in determining that Gassaway lacked the mental capacity to enter into a binding contract at the time she signed the Agreement. Without countervailing evidence, we must concur with the district court's finding that the Agreement was unenforceable.

Because we find the Agreement is unenforceable on this ground, we find it unnecessary to address the other grounds of invalidity found by the district court.


IV.

Because the district court did not abuse its discretion in admitting and considering evidence offered by Brown to prove Gassaway's mental incapacity and Ryan's offered no proof to rebut the evidence, the district court did not clearly err in finding that Gassaway did not have the mental capacity to enter into a binding contract. Because Brown was a minor at the time of signing the Agreement and Gassaway lacked the mental capacity to make the Agreement enforceable, the district court's decision to deny the motion to dismiss and the motion to compel arbitration is

*AFFIRMED.*